HELMER et ux, *Appellants/Cross-respondents,*
*v.*
TRANSAMERICA TITLE INSURANCE CO.,
*Defendant,*
and
NELSON et ux, *Respondents/Cross-appellants.*
(No. 34-766, SC 24619)

569 P2d 10

Fred A. Anderson, Tigard, argued the cause for appellants/cross-respondents. With him on the briefs were Anderson, Dittman & Anderson, Tigard.

Robert L. Fulkerson, Portland, argued the cause for respondents/cross-appellants. On the brief were F. R. Cornilles and Cornilles & Banton, Portland.

BRYSON, J.

## BRYSON, J.

Plaintiffs Helmer and defendants Nelson executed an earnest money receipt wherein plaintiffs agreed to buy a house from defendants. The sale was not completed, and plaintiffs brought this action to recover funds they had deposited in escrow with Transamerica Title Insurance Co. (Transamerica).[1] The defendants' answer denied plaintiffs' right to such funds and counterclaimed for damages caused by plaintiffs' alleged breach of the earnest money agreement. Neither party seeks specific performance of the contract.

The trial court, sitting without a jury, found for the defendant sellers and awarded damages. Plaintiffs appeal; defendants cross-appeal, contending that the trial court erred in its determination of damages.

On June 25, 1974, the parties entered into an earnest money agreement, which provided in part:

"RECEIVED OF Garry Helmer hereinafter mentioned as the Purchaser, the sum of Two hundred and fifty and 00/100 ($250.00) Dollars as earnest money and in part payment for the purchase of the following described real estate * * *.

"* * * * *.

"It is agreed that if the title to the said premises is not marketable * * *, the earnest money herein receipted for shall be refunded. But if the title to the said premises is marketable, and the purchaser neglects or refuses to comply with any of the conditions of this sale within _____ days and to make payment promptly, as hereinabove set forth, then the earnest money herein receipted for shall be forfeited to the owner as liquidated damages, and this contract shall thereupon be of no further binding effect.

"* * * * *.

"Possession of the above described premises is to be delivered to the purchaser on or about Aug. 15, 1974.

---

[1]Transamerica is not a party on appeal. Defendants referred to are John A. and Doreen H. Nelson.

Time is the essence of this contract. Depending on completion date of sellers new home, not to exceed Sept. 1, 1974."

On August 13, 1974, Barbara Helmer called Nelson to arrange the closing. Nelson was having some difficulties in finishing his new house. However, he called plaintiffs the next day and suggested that they proceed with the closing on August 15. Plaintiffs were to take possession as soon as the Nelsons "could possibly move out." Plaintiffs agreed and now rely on this conversation as constituting an oral modification of the earnest money agreement.

On August 15 plaintiffs deposited $13,586.50 in escrow with Transamerica and signed escrow instructions authorizing Transamerica to close at any time within the next 15 days, subject to defendants' completion of their part of the bargain.

The Nelsons failed to go to Transamerica on the 15th as planned so they went there on the 16th and signed escrow instructions authorizing Transamerica to close. However, the Nelsons objected to the way the interest charges were prorated. Transamerica's records show that Nelson instructed Transamerica not to record the deed until the interest problem was resolved, although defendants deny having given such instructions. The defendants were about to go on vacation so the parties agreed to postpone the closing and transfer of possession date until after they returned.

On August 26 (within the "next 15 days") the parties met at the house to try to complete the sale. The Nelsons gave the Helmers a key, and the Helmers began to move their belongings into the house. After some discussion, the parties agreed to close on August 27. However, when Nelson called Transamerica the next day, he was told that it would be impossible to complete the paper work that day.

Nelson then called plaintiffs to suggest that they use the August 15 closing papers and allow him to

[ 460 ]

make up the difference on the prorates with a personal check. This offer, which would have permitted closing on the 27th, was refused by the plaintiffs. Nelson then told Transamerica that he and his wife would come in and sign the papers on August 28.

Transamerica called plaintiffs to ask for confirmation of the agreement, but plaintiffs did not confirm. Instead, on the evening of August 27 they told defendants that they intended to withdraw from the agreement.

Plaintiffs' principal reason for withdrawing from the agreement was defendants' alleged failure to close the transaction on August 15, but they gave several additional reasons. These included disputes about the fixtures and draperies that were to remain in the house. The trial court found these latter reasons to be "wholly without foundation in fact" and merely excuses to hide the real fact that plaintiffs had found a house that they preferred to the defendants' house. This finding is supported by the evidence.

Plaintiffs demanded that all escrowed monies be returned to them. On September 6, 1974, defendants allowed Transamerica to release $8,444.50 to the plaintiffs. They refused to allow the release of the remaining $5,142. Nelson testified:

> "* * * We tried to come up with a realistic estimate of what the damages might be and we retained that amount and returned the rest to the Helmers so that they could have the use of that money."

In their letter authorizing the release of funds, defendants specified that "[t]he release of funds to Helmers is done without prejudice to the position that the Nelsons may take in the event of litigation between the parties." The Nelsons later sold their house for $41,000, $1,000 less than the price agreed to by plaintiffs. This litigation followed.

◼ Three of plaintiffs' six assignments of error concern the effect of the parties' oral agreement to close on August 15. Plaintiffs characterize this agreement as

an oral modification of the earnest money agreement. They argue that defendants' failure to sign the closing papers on August 15 and their refusal to allow recording of the deed or to transfer possession on August 16 constituted a breach of the modified agreement.

The trial court made no findings on whether the parties intended to modify the earnest money agreement. Instead, the court relied on the statute of frauds to hold that the original earnest money agreement controlled in any case. However, we need not decide whether the trial court correctly applied the statute to this case because we are persuaded that the facts show no modification of the agreement.

The earnest money agreement contemplated and allowed for just such problems in closing as the parties encountered. Defendants were in the process of selling one home and completing the building of another, which could reasonably be expected to cause difficulties in closing. For this reason, the parties agreed that closing was to be dependent "on completion date of sellers [sic] new home, not to exceed Sept. 1, 1974." This allowed the parties leeway in completing their agreement. Thus, when defendants agreed to proceed with the closing on August 15 there was no modification of the agreement; rather, it was an attempt to carry out the agreement. Further, the failure of this attempt was no breach because, as said above, the agreement provided for just such difficulties. Similarly, defendants' objections to the interest charges, their alleged request to Transamerica not to record the deed until the interest problem was resolved, and Transamerica's later inability to complete the necessary paper work on time were all common closing problems and all fell within the agreement as written.

Given this interpretation of the agreement, the trial court's conclusion that the earnest money agreement controlled was correct and is affirmed, even though the court may have erred in relying on the

statute of frauds to reach his conclusion. This result follows from the principle that "a judgment will be affirmed if it is correct, * * * although an incorrect reason was stated as a basis for the judgment." *Pakos v. Warner,* 250 Or 203, 205-06, 441 P2d 593 (1968); *Reid v. Reid,* 219 Or 500, 512, 348 P2d 29 (1959).

■■ Plaintiffs next argue that defendants' instructions to Transamerica to release the major portion of the purchase money from escrow pursuant to plaintiffs' demand operated as a mutual rescission of the contract. However, as we noted in *McGrath v. Electrical Const. Co.,* 230 Or 295, 305, 364 P2d 604, 370 P2d 231 (1962):

> "* * * In the absence of a legal ground for rescission, if no option to terminate has been reserved, all the parties to the contract must assent to its rescission or abrogation, and there must be a meeting of their minds. * * *" (Citations omitted.)

In this case, defendants at all times made clear to plaintiffs that they expected to rely on their rights under the earnest money agreement as previously set forth in their letter to plaintiffs of September 6, 1974. Therefore, defendants did not agree to rescind, and there is ample evidence to support the trial court's finding.

Plaintiffs' final contention is that defendants' counterclaim is barred by the election of remedies doctrine. When plaintiffs first brought this action, defendants counterclaimed, seeking specific performance of the earnest money agreement. However, subsequent to the filing of their first counterclaim and the beginning of trial, defendants sold their home and then amended their counterclaim to seek damages.

■ A subsequently sought remedy will only be barred where it is inconsistent with the remedy initially pursued. *McAllister v. Charter First Mortgage,* 279 Or 279, 567 P2d 539 (1977). In this case defendants' initial counterclaim for specific performance and their amended counterclaim for damages are not inconsis-

tent.[2] Both are based upon and recognize the continued validity of the contract. They do nothing more than reflect a change in the facts which occurred during the pendency of the lawsuit prior to trial. The case is thus distinguishable from those where a party first seeks rescission and later elects to proceed on the contract. The election of remedies doctrine generally forbids such action on the grounds that a party should not be allowed to disaffirm and then affirm the contract. But where a party's opponent is not unduly prejudiced by an amendment to the pleadings prior to trial, it is preferable that the parties be allowed to mitigate their losses and amend their pleadings to seek damages.

Defendants cross-appeal and contend that "the court erred as a matter of law in not granting the full $5,142.00 prayed for by the defendants as damages." The trial court awarded only $3,500 to defendants and returned the balance to the plaintiffs.

On the amount of damages we have only the trial court's general verdict. We have previously held that "a general finding of fact by a trial judge in an action at law tried without a jury is the equivalent of a jury verdict and cannot be set aside by this court when supported by any substantial evidence." *Hawkins v. Teeples and Thatcher,* 267 Or 151, 157, 515 P2d 927 (1973). It follows that absent findings of fact and conclusions of law by the trial court, the award of damages must be affirmed if it finds any support in the evidence. As the trier of fact, the trial court is not compelled to believe the evidence. *Rickard v. Ellis,* 230 Or 46, 368 P2d 396 (1962).

The burden of proving damages under the counter-claim rested upon defendants. Since the trial court was not compelled to believe defendants' testimony or that

---

[2] Accord, Restatement of Contracts § 382:

"The bringing of a suit either for specific performance or for compensation in money is not such an election of the remedy sued for as to operate as a bar to a later suit or to an amendment asking for the other remedy with respect to the same breach; * * *."

their subsequent sale was the earliest or best that could have been made, we cannot say that the trial court erred as a matter of law in granting judgment for less than the full amount demanded by defendants.

Affirmed.