Jan. 10, 2002.

John C. DEWEY and Elizabeth A. Dewey, Appellants (Defendants/Third–Party Plaintiffs),

v.

Richard D. WENTLAND and Doris J. Wentland, Appellees (Plaintiffs),

and

Harry Barnett, d/b/a Hub Real Estate, Appellee (Third–Party Defendant).

Richard D. Wentland and Doris J. Wentland, Appellants (Plaintiffs),

v.

Dewey Family Trust, and John C. Dewey and Elizabeth A. Dewey, Co-trustees; and John C. Dewey and Elizabeth A. Dewey, as individuals, Appellees (Defendants).

John C. Dewey and Elizabeth A. Dewey, Appellants (Third–Party Plaintiffs),

v.

Harry Barnett, d/b/a Hub Real Estate, Appellee (Third–Party Defendant).

Richard D. Wentland and Doris J. Wentland, Appellants (Plaintiffs),

v.

Dewey Family Trust, John C. Dewey and Elizabeth A. Dewey, Co-trustees; and John C. Dewey and Elizabeth A. Dewey, as individuals, Appellees (Defendants).

John C. Dewey and Elizabeth A. Dewey, as individuals, Appellants (Defendants/Third–Party Plaintiffs),

v.

Richard D. Wentland and Doris J. Wentland, Appellees (Plaintiffs),

and

Harry Barnett, d/b/a Hub Real Estate, Appellee (Third–Party Defendant).

Nos. 00–93, 00–178, 00–179, 00–244, 00–245.

Supreme Court of Wyoming.

Randy L. Royal, Greybull, WY, Representing the Wentlands.

James P. Castberg, Sheridan, WY, Representing the Deweys.

Timothy M. Stubson of Brown, Drew & Massey, LLP, Casper, WY, Representing Harry Barnett.

Before LEHMAN, C.J., and GOLDEN, HILL, KITE, and VOIGT, JJ.

KITE, Justice.

[¶ 1] John and Elizabeth Dewey (the buyers) entered into a lease purchase agreement with Richard and Doris Wentland (the sellers) regarding the sellers' ranch. A dispute arose over the sellers' obligation to provide hay during the first winter for certain cattle. The buyers ultimately withdrew from the agreement and made numerous claims against the sellers and their real estate agent, Harry Barnett (the agent), including misrepresentation and breach of contract. The sellers countered with a breach-of-contract claim and requested specific performance of the agreement. The buyers seek review of the trial court's dismissal of numerous claims at various stages of the proceedings on issues of law, and the sellers challenge the trial court's denial of specific performance and the jury's verdict which awarded less damages than they deemed appropriate. We conclude the trial court properly applied the law and the jury's verdict was consistent and supported by legally sufficient evidence.

## FACTS

[¶2] On June 22, 1994, the sellers entered into an Exclusive Right to Sell Listing Contract with the agent. After inspecting the property on three occasions, the buyers submitted an offer to buy the sellers' property for $450,000 on October 1, 1994. The buyers signed a form entitled "Offer, Acceptance and Receipt Specific Performance Contract (Farm & Ranch & Vacant Land)" as well as a form entitled "Addendum to Contract." In the addendum, the offer was made contingent upon the buyers' obtaining financing and selling their Sheridan property before March 1995. The addendum further provided that, if the Sheridan property was not sold by the designated date, the buyers would lease the sellers' ranch until their property sold with the lease cost to be applied to the purchase price of the sellers' property. Finally, the addendum added personal agreements regarding the buyers' leasing the sellers' cattle.

[¶3] In response to the offer, the sellers presented a counteroffer which was accepted by the buyers. The counteroffer incorporated all the provisions in the offer and addendum but added terms regarding the leased cattle. Thereafter, the parties prepared and executed a lease purchase agreement for a one-year lease term which incorporated the offer, addendum, and counteroffer.

[¶4] After the buyers took possession of the premises, problems arose which resulted in multiple claims.[1] The buyers assert the sellers and their agent made several misrepresentations regarding the sellers' property. In addition, the buyers claim the sellers failed to leave sufficient first-cutting hay to winter the leased cattle. As a result, the buyers filed a lien statement in the amount of $10,430 with the Big Horn County Clerk. Subsequently, the sellers filed a Complaint for Temporary Restraining Order, Preliminary Injunction and Permanent Injunction in the District Court for the Fifth Judicial District in Big Horn County, thus initiating this litigation. On the hearing date, the parties stipulated that the buyers would not proceed with the lien foreclosure action, and in return the sellers agreed the court would hold $10,430 as a bond for satisfaction of the lien. Meanwhile, the buyers gave the sellers notice that they would not exercise their option to purchase the property and would leave the premises by November 1, 1995. The buyers did in fact vacate the premises on or about November 11 or 12, 1995.

[¶5] In response to the sellers' complaint, the buyers counterclaimed alleging intentional misrepresentation, negligent misrepresentation, failure to disclose, breach of good faith and fair dealing, conversion, and breach of contract, and they requested a remedy of declaratory judgment. In addition, the buyers filed an amended complaint to include claims of negligent misrepresentation, failure to disclose, and conversion against the real estate agent as a third-party defendant. The sellers also filed an amended complaint seeking initial injunctive relief, specific performance, and damages for breach of contract. The sellers intimated that, because the buyers no longer wanted to purchase the property, they were asserting essentially frivolous claims to elude performance.

[¶6] Following a summary judgment hearing on motions filed by all parties, the trial court, in a thorough and lengthy decision letter, dismissed several of the claims against the sellers and the agent. The only surviving claims against the sellers were breach of contract, intentional misrepresentation, and negligent misrepresentation regarding the number of acres included in the state lease. The only surviving claim against the agent was negligent misrepresentation on the same issue.

[¶7] The remaining claims proceeded to a jury trial. At the conclusion of trial, the trial court granted the sellers' motion for a judgment as a matter of law pursuant to W.R.C.P. 50 on the claims of negligent and intentional misrepresentations. The jury subsequently returned a verdict which essentially found the real estate transaction was a lease with an option to buy rather than a

---

1. We note the buyers were represented by counsel for the majority of the pretrial proceedings. The buyers' counsel was allowed to withdraw on February 11, 1999. Subsequently, the buyers represented themselves *pro se* through trial but are represented by counsel on appeal.

contract for purchase. According to the verdict form, unless the jury found the parties entered into a contract to purchase the ranch, damages could not be awarded to the sellers. The jury informed the trial court: "We do not think that the lease purchase agreement was a contract to purchase the property. It was a lease for one year. [The sellers] do deserve to be compensated for some expenses. Are we allowed to award them some damages[?]" The court instructed the jury to answer the question regarding damages regardless of its answer to the initial question. The jury then determined the sellers incurred $32,497.29 in damages for certain payments that should have been made under the lease. Additionally, the jury awarded the buyers $10,430 in compensation for hay they had to purchase. Pursuant to W.R.C.P. 50 and the lack of sufficient evidence, the trial court struck the $10,430 damage award to the buyers. After trial, the court denied the sellers' complaint for specific performance but awarded them the earnest money deposit and the lease payments with accrued interest. The buyers filed three appeals, the sellers filed two appeals, and this court consolidated all the appeals for appellate review.

## DISCUSSION

### A. Whether the Trial Court Committed Error in the Entry of Partial Summary Judgment

#### 1. *Negligent Misrepresentation and Intentional Misrepresentation*

[¶ 8] Summary judgment is appropriate when no genuine issue as to any material fact exists and the prevailing party is entitled to have a judgment as a matter of law. *Eklund v. PRI Environmental, Inc.*, 2001 WY 55, ¶ 10, 25 P.3d 511, ¶ 10 (Wyo. 2001); *see also* W.R.C.P. 56(c). A genuine issue of material fact exists when a disputed

fact, if it were proven, would have the effect of establishing or refuting an essential element of the cause of action or defense which has been asserted by the parties. *Williams Gas Processing—Wamsutter Company v. Union Pacific Resources Company*, 2001 WY 57, ¶ 11, 25 P.3d 1064, ¶ 11 (Wyo.2001). We examine the record from the vantage point most favorable to the party who opposed the motion, and we give that party the benefit of all favorable inferences which may fairly be drawn from the record. *Id.* We evaluate the propriety of a summary judgment by employing the same standards and by using the same materials as were employed and used by the lower court. *Scherer Construction, LLC v. Hedquist Construction, Inc.*, 2001 WY 23, ¶ 15, 18 P.3d 645, ¶ 15 (Wyo.2001). We do not accord any deference to the district court's decisions on issues of law. *Id.*

[¶ 9] For purposes of efficiency, we will conjunctively examine the propriety of the grant of partial summary judgment to the agent and the sellers. The same facts are alleged to support the claims for both intentional misrepresentation and negligent misrepresentation, although we reiterate the claim against the agent is only for negligent misrepresentation.[2] The buyers based the alleged misrepresentations upon statements contained in the information sheet provided to them and several alleged oral statements made while they inspected the property with the agent. The trial court based its decision on the parties' depositions, affidavits, and briefs. We note, because the parties designated only a limited portion of the record, our review is necessarily constrained.

#### (a) MISREPRESENTATIONS MADE IN THE INFORMATION SHEET

[¶ 10] Intentional misrepresentation and negligent misrepresentation share common elements. Intentional misrepresentation (fraud) is established when the follow-

---

**2.** In *Hulse v. First American Title Company of Crook County*, 2001 WY 95, ¶ 60, 33 P.3d 122, ¶ 60 (Wyo.2001), we clarified that tort claims against licensed real estate professionals premised on their duties imposed by statute give rise to a claim for professional negligence. In that case, we concluded that claims raised against the real estate professional at issue, while labeled

"negligent misrepresentation," were essentially asserted as a breach of duty of care owed by real estate professionals to nonclient buyers. *Hulse*, ¶ 62. Because the claims against the agent in the instant case were labeled and analyzed as negligent representation, our analysis will proceed accordingly.

ing elements are proven: "(1) the defendant made a false representation intended to induce action by the plaintiff; (2) the plaintiff reasonably believed the representation to be true; and (3) the plaintiff relied on the false representation and suffered damages." *Sundown, Inc. v. Pearson Real Estate Company, Inc.*, 8 P.3d 324, 330 (Wyo.2000). Intentional misrepresentation must be established by clear and convincing evidence. *Id.* Quite similarly, a plaintiff in a claim for negligent misrepresentation must show:

> "One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information."

*Hulse v. First American Title Company of Crook County*, 2001 WY 95, ¶ 52, 33 P.3d 122, ¶ 52 (Wyo.2001) (quoting *Richey v. Patrick*, 904 P.2d 798, 802 (Wyo.1995)). A fundamental difference between the two causes of action is, a plaintiff need only prove negligent misrepresentation by a preponderance of the evidence, not unlike any other plaintiff in any other action sounding in negligence, while a plaintiff must prove intentional misrepresentation by clear and convincing evidence. *Verschoor v. Mountain West Farm Bureau Mutual Insurance Company*, 907 P.2d 1293, 1299 (Wyo.1995).

[¶ 11] The trial court found the buyers failed to provide evidence sufficient to demonstrate material issues of fact concerning the various misrepresentations they claimed occurred. First, the buyers alleged statements in the information sheet provided by the sellers and the agent to interested potential purchasers misrepresented the amount of water rights attributable to the property as follows: "Water rights for 1075 acres plus reservoir water from Lake Adelaide. Several small reservoirs on the property," and "WATER COSTS: Shell Canal Rehab—$4,251.97; Shell Canal Adelaide—$5,994.02; 1994 Shell Canal @ $8.50/acre—$8,604.96."

The buyers argued the testimony of J.R. Kvenild, a Wyoming real estate broker, demonstrated a misrepresentation when he testified that, according to his research and information from the State Engineer's office, "there isn't a full 1,075 acres of water rights." However, the designated record provides no evidence submitted by the buyers to establish the amount of water rights they contended was accurate.

[¶ 12] An affidavit from Dorothy Balo, an employee with the Shell Canal Company, was presented to the trial court and provided in part:

> (4) According to the books, records and accounts of Shell Canal Company, there are water rights for 1,075.62 acres. These are the same water rights available to [the sellers] from and after September of 1994, according to our books and records.

> (5) In addition to those water rights, there is water available from Lake Adelaide to service the [sellers'] property.

[¶ 13] The trial court granted summary judgment concluding that no false statement was intentionally or negligently made because the Shell Canal Company records were used to compile the information sheet and, while the sellers occupied the property, they paid for water rights on 1,075 acres. Testimony that the water rights were not on a full 1,075 acres without any evidence as to the amount the buyers contended was accurate is insufficient to create a material issue of fact that a false statement was made.

[¶ 14] Second, the buyers contend the statement that the property consisted of approximately 1,956 acres plus seven acres for the home place was a misrepresentation of the acreage. The buyers' claim is either they were not provided with land descriptions or it was not possible to accurately determine the total amount of acreage included in the sellers' property from the land descriptions. Regardless of which contention is applied, both arguments fail to establish the essential element of a misrepresentation; i.e., that a false representation was made. The designated record does not reflect any evidence provided to the trial court which would establish a material issue of fact.

[¶ 15] Third, the buyers allege the number of acres which were capable of being put into production was misrepresented. The information sheet provided there were "[a ]pproximately 600 acres in production now with another 200 acres that could be put in." (Emphasis added.) The agent testified the sellers had told him "there was about 450 acres of alfalfa, about 100 acres of oats, and I believe 60 to 80 acres of irrigated pasture." This statement is consistent with the estimated production set out in the information sheet. Furthermore, the Farm Service Agency (the Agency) supervisor's affidavit reflected the buyers had filed three separate reports with the Agency indicating they had 745 acres of "crop land."

[¶ 16] In granting summary judgment on this issue, the trial court relied upon the following factors:

Considering the use of the word, "approximately," in the Property Condition Statement, the caveat found at the bottom of the Property Condition Statement, the fact that John Dewey did not know the dates the photographs he used were taken and did not know whether all of the property depicted was part of the [sellers'] place or not, the fact that there was no survey done and there was no engineer's report available, and the fact that John Dewey, himself, after drilling his grain, represented a significantly larger number to the Department of Agriculture, there is clearly no material issue of fact regarding the point in question—that is, whether there was a misrepresentation. . . .

Upon a thorough review of the evidence and materials presented to the trial court, we agree with the court's reasoning and assessment of the evidence.[3] The buyers did not provide any evidence that there was less than the approximated acreage as identified in the information sheet.

[¶ 17] Finally, the buyers assert the number of cattle located on the property was misrepresented by the statement on the information sheet that the sellers were "[p]resently running 175 cows and calves on the place." The buyers assert "175 cows and calves" implies there were 175 cow/calf pairs, for a total of 350 animals on the property. Specifically, the buyers maintain, "It would only stand to reason tha[t] any court in Wyoming, a state rich in the heritage of the livestock industry, . . . would take judicial notice that when speaking of a cow and a calf, you are speaking of a pair." The buyers admitted that, on their three property inspections, they saw only a total of approximately 160 animals, an amount significantly less than what they maintained was represented in the information sheet.

[¶ 18] In *White v. Ogburn*, 528 P.2d 1167, 1171 (Wyo.1974), we addressed a fraudulent misrepresentation claim regarding the number of cattle being run on the property at the time of sale. In that case, we dismissed the claim for fraudulent misrepresentation with the following language: "We do not say that [defendants] could not rely upon representations made to them by the [plaintiffs], but they could not blind themselves to observe the readily available facts and place reliance upon such alleged misrepresentations without making a diligent inquiry of these facts." 528 P.2d at 1171. We have previously stated that "[r]eliance is reasonable when false representations have occurred prior to the execution of the contract which is sought to be avoided or for which damages are sought to be recovered." *Sundown, Inc.*, 8 P.3d at 331. Just as the purchasers in *White* were able to observe the cattle on the premises, so too were these buyers. Even if the buyers could have initially proven a misrepresentation, once they inspected the property and had the ability to observe the number of cattle on the premises, they could no longer rely upon their belief that the property supported 350 animals. The buyers failed to provide evidence to establish a material issue of fact existed as to the essential element of reliance.

---

**3.** On appeal, the sellers ask this court to consider several portions of the jury trial transcript. We take this opportunity to remind counsel that, in reviewing a grant of summary judgment, we are constrained to employ the same materials as were used by the trial court. *Scherer Construction, LLC*, ¶ 15. Obviously, the trial court's decision on partial summary judgment preceded the jury trial in this matter; therefore, we will not consider evidence presented at trial.

[¶ 19] Summary judgment was properly granted on each of the claimed intentional and negligent misrepresentations contained within the information sheet.

**(b) ORAL MISREPRESENTATIONS**

[¶ 20] The buyers also complain the trial court erred by granting summary judgment on several oral misrepresentations allegedly made to them by the agent during the property inspections. On appeal, the buyers provided no evidentiary support for these claims. Instead, they argued the questions of whether all the oral representations were even made and whether they were false were factual questions appropriate for consideration by a jury. This argument disregards the buyers' duty to come forward with competent evidence of specific facts to counter the motion for summary judgment. The alleged oral misrepresentations are as follows:

1. The agent stated the alfalfa was killed by "heat broiling";

2. The buyers were not told about the existence of the weeds;

3. The agent misrepresented that he helped harvest sixty bushels of barley from the sellers' place;

4. The agent misrepresented that the Letellier house was "about six years old";

5. The agent was not aware of the condition of the irrigation pipes and head gates and should have been;

6. Misrepresentation of the condition of the septic system at the Hallsted place;

7. Misrepresentation that a new septic system had been put in at the Letellier place;

8. Misrepresentation on the number of places alkali had leaked to the surface of the ground;

9. Cistern was represented to have been cleaned but was neither cleaned nor disinfected;

10. House at the Hallsted place had not been cleaned as represented; and

11. The agent misrepresented the alfalfa production capability.

Summary judgment was granted on five of the alleged oral misrepresentations due to a lack of admissible evidence that the representations were false. These include:

1. Alfalfa was killed by "heat broiling";

2. The agent misrepresented that he helped harvest sixty bushel/acres of barley from the sellers' place;

3. Misrepresentation on the septic system at the Letellier place;

4. Cistern at the Hallsted place was represented to have been cleaned but was neither cleaned nor disinfected; and

5. The agent misrepresented the alfalfa production capability.

The trial court commented:

[T]his Court has scoured every detail of the record for some admissible evidence that the representations referred to therein were false. [The buyers] have offered zero evidence on any of those allegations, and simply rely upon the proposition that whether they were false or not is a question of fact; however, [the sellers] have come forward with admissible evidence that they are, in fact, true.

"One of the basic elements of fraud is the falsity of the representation of a material fact." *White*, 528 P.2d at 1171. Our review of the same material considered by the trial court likewise leads us to the same conclusion—the buyers presented no evidence to support the allegation the representations were in fact false.

[¶ 21] The trial court granted summary judgment on three of the alleged oral misrepresentations stating, "[the buyers] have neither argued nor submitted evidence that there were misrepresentations with respect to any of these items." The allegations concerned (1) the existence of the weeds, (2) the condition of the irrigation pipes and head gates, and (3) misrepresentations about the alkali leaking to the surface. These claims reflect the buyers' propensity throughout this litigation to make bald assertions without evidentiary support. In fact, the buyers did not come forward with any evidence to show these representations were even made to them.

[¶ 22] Next, the buyers claim the agent represented the Letellier home

was about six years old. The agent testified in his deposition that, if the buyers had asked about the Letellier home, he would have told them it was probably built in the '50s. Notably, the buyers admitted they inspected the home, both inside and out, before they submitted their offer. It is not reasonable for the buyers to rely upon a representation, if in fact one was made, that the home was only six years old when it would be evident upon inspection that the home was much older. In terms of the intentional misrepresentation claim, the buyers are not justified in relying upon the truth of a representation if its falsity is obvious to them. Restatement (Second) of Torts § 541 (1977). Stated another way, one cannot recover if he blindly relies upon a representation, the falsity of which would be obvious to him upon a cursory examination or investigation. *Id.* at cmt. a. In this instance, the buyers were required to use their own senses, and, because they had the opportunity to inspect the property, no reasonable jury could conclude they relied on the statement. As there is no genuine issue of material fact regarding justifiable reliance or evidence that the representation was made, we affirm.

[¶ 23] The buyers also maintain the Hallsted place had not been cleaned as represented. The trial court remarked that this claim "demonstrate[d] the frivolous nature of the vast majority of the [buyers'] claims." Again, the buyers admitted they inspected the Hallsted place before they submitted their offer and, therefore, were not relying on its cleanliness as an inducement to enter into an agreement.

[¶ 24] Finally, the buyers allege the condition of the Hallsted place septic system was misrepresented. They claim a septic problem occurred subsequent to their possession of the premises. However, no evidence was offered that either the sellers or the agent knew of any problem or problems which had existed prior to closing. The buyers do not direct this court to any evidentiary basis to prove a false representation was made.

[¶ 25] The various misrepresentations must fail for a lack of proof that representations were made, relied upon, or false.

In order to succeed on summary judgment, the movant must establish a prima facie case, and then the burden shifts to the opposing party who must show a genuine issue of material fact or come forward with competent evidence of specific facts countering the facts presented by the movant. *Bender v. Phillips*, 8 P.3d 1074, 1077 (Wyo.2000). At the trial court level and again on appeal, the buyers failed in their burden to establish material issues of fact on both the intentional misrepresentation and the negligent misrepresentation claims. Consequently, we affirm all aspects of the trial court's grant of partial summary judgment in favor of the sellers and the agent.

### 2. Negligent Nondisclosure

[¶ 26] The buyers also assert claims based on negligent nondisclosure. Their brief sets out a single argument in support of their contention that partial summary judgment was improperly granted on this issue:

The lower court in its ruling on the issue of failure to disclose held that the authority in *Richey, supra,* was dispositive and therefore granted summary judgment in favor of [the sellers] and [the agent]. The elements necessary to establish a cause of action for non-disclosure are founded in factual determinations. The Court committed error in not allowing these factual determinations to be made by the jury.

"We summarily affirm cases or issues that have not been presented with cogent argument or supported by pertinent authority." *Small v. Convenience Plus Partners, Ltd.,* 6 P.3d 1254, 1256 (Wyo.2000). Thus, we decline to consider the claims for negligent nondisclosure.

### B. Motions for Judgment as a Matter of Law

#### 1. Representation of Number of Acres in State Lease

[¶ 27] Following the presentation of evidence, the sellers and the agent made a W.R.C.P. 50 motion for judgment as a matter of law contending the buyers' claims of intentional and negligent misrepresentations re-

garding the number of state leased acres lacked a legally sufficient evidentiary basis. The information sheet contained the following language: "STATE LEASES: 190 acres—annual cost $155.00." The accurate number of state leased acres was later determined to be eighty acres. The trial court granted the motions stating: "it certainly is apparent that no reasonable jury having heard the evidence in this case could find for [the buyers] on any of those claims." The court concluded the buyers failed to show they had relied upon the misinformation of the amount of acres in the state lease due to the information sheet disclaimer and because the buyers admitted they had done their own investigation. The trial court also found the buyers completely failed to show damages and voiced a concern that the jury would be forced to speculate in order to assess an amount of damages. We agree.

[¶ 28] W.R.C.P. 50(a)(1) provides:

(a) *Judgment as a matter of law.*

(1) If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue.

"Despite the fact that judgment as a matter of law should be granted cautiously and sparingly, the district court has an obligation to direct entry of such a judgment where there is legally insufficient evidence to support a verdict on a particular issue." *Sayer v. Williams*, 962 P.2d 165, 167 (Wyo.1998). We review the decision to grant or deny a motion for a judgment as a matter of law *de novo. Sundown, Inc.*, 8 P.3d at 330. Under our *de novo* standard, we undertake a full review of the record without giving deference to the trial court's views. *Wyoming Medical Center, Inc. v. Murray*, 2001 WY 63, ¶ 7, 27 P.3d 266, ¶ 7 (Wyo.2001). The test is whether the evidence is such that, without the witnesses' credibility being weighed or the weight of the evidence otherwise being considered, there can be but one conclusion as to the verdict that reasonable persons could have reached. *Id.* We view the evidence in the light most favorable to the nonmoving party and give that party the benefit of all the reasonable inferences which may be drawn from the evidence. *Id.* When the facts presented permit the drawing of more than one inference, it is for the jury to choose which will be used. *Id.* "If the inferences favorable to the movant are subject to doubt, or if parallel inferences can be drawn, the motion appropriately is denied." *Id.* We affirm the district court's grant of the motion for judgment as a matter of law in favor of the sellers and the agent because there was no evidence for the jury to consider on two of the required elements: reliance and damages.

[¶ 29] The sellers admitted they supplied the facts contained in the information sheet to the agent. Specifically, the information sheet represented 190 acres of state leased land existed on the real property at issue. The sellers conceded the information sheet error at trial and acknowledged there were only eighty state leased acres. The buyers admitted that, during a prepurchase inspection, the agent had shown them a strip of land dividing the property which was identified as state land. Mr. Dewey expressed his concern that:

[T]he fence lines on this state property that divided the ranch had approximately a 200–foot jog in it. I needed to know where that state land was, because if I put in new fences and I put them in on state land, even if they are wrong, state land cannot be assumed by adverse possession if you have the fences wrong.

The buyers' unease did not establish reliance but rather established a specific recognition that the information might be incorrect and needed to be investigated. Indeed, rather than relying upon the stated amount of acres, the buyers offered to make an independent investigation through a friend at the Wyoming State Land and Farm Loan Office (the Office). On September 29, 1994, the buyers asked the Office to provide identification for all the state land where the sellers' ranch

was located. The Office's response revealed there were only eighty acres of state leased land rather than the 190 acres listed in the information sheet.[4]

[¶ 30] The buyers fail to point to any evidence, let alone legally sufficient evidence, to establish their reliance upon the stated amount of leased acres in the information sheet or damages suffered as a result of such reliance. Instead, they present only conclusory statements unsupported by the record, which will not be given credence by this court. *Eklund*, ¶ 10 (general allegations and conclusory statements are not sufficient to oppose a motion for summary judgment). On the claims of intentional and negligent misrepresentations, the record demonstrates a manifest absence of any evidence which could allow a reasonable person to conclude that either reliance or damages existed. For these reasons, the trial court appropriately granted the W.R.C.P. 50 motion brought by the agent and the sellers.

### 2. *Damages for Hay*

[¶ 31] After the trial, the sellers requested the trial court grant a judgment as a matter of law because the buyers failed to offer the jury a mathematical computation or method to support the $10,430 damage award for hay. The trial court struck the jury's finding of hay damages stating:

> [T]here was no evidence whatsoever shown which would quantify the amount [the sellers] should have paid to [the buyers]. The jury was not allowed to speculate concerning the amount of damage and the Court finds that no reasonable jury could have concluded that based upon the testimony presented in court, $10,430.00 was an appropriate amount to have awarded [the buyers].

[¶ 32] Our duty is to determine whether the evidence was legally insufficient to support the jury verdict on this particular issue. *Sundown, Inc.*, 8 P.3d at 330. Plaintiff's Exhibit 34 is the only evidence which

the buyers could argue substantiates the award. The exhibit is a bank ledger with an entry on May 22, 1995, which reflected a bank operating loan disbursement to the buyers in the amount of $10,430. The notation in the column entitled "Purpose of Advance/Source of Repayment" states "per John hay." The buyers offered no further factual basis to support the $10,430 amount other than this exhibit. There was absolutely no testimonial evidence that the loan was used to purchase hay to feed the cattle. Furthermore, the buyers acknowledged that the sellers' only contractual obligation was to furnish sufficient first-cutting hay for the leased cattle. The buyers further conceded they used the first-cutting hay to feed both their own cattle and the leased cattle. Therefore, the amount chosen by the jury could not have accounted for the amount used to feed the buyers' cattle. A jury is not permitted to speculate or engage in conjecture in awarding damages. *Martinez v. City of Cheyenne*, 791 P.2d 949, 960 (Wyo.1990). Therefore, pursuant to W.R.C.P. 50, the trial court properly struck the $10,430 jury award due to legally insufficient evidence.

### C. Order Releasing Bond

[¶ 33] The buyers claim the trial court erroneously released the sellers' bond. Again, the buyers provide no pertinent authority to support their position. As noted in the recitation of the facts: (1) The buyers filed a lien statement in the amount of $10,430; (2) the sellers filed a Complaint for Temporary Restraining Order, Preliminary Injunction and Permanent Injunction; (3) the sellers were ordered to post an injunction bond in the amount of $10,430, the amount the buyers claimed was owed to them for the hay; (4) the parties stipulated that the buyers would not proceed with their lien foreclosure action; and (5) in return the sellers agreed the court would hold the $10,430 as a bond for satisfaction of the lien. The stipula-

---

4. At trial, there was a disputed issue as to when the buyers actually received this information. The letter written by the Office was postmarked the day of the buyers' request—September 29, 1994. The sellers contend the date of receipt was significant because September 29, 1994, was

one day prior to the buyers' offer. According to the sellers, if the buyers received notice prior to submitting the offer, there could be no justifiable reliance. However, the buyers claim they did not receive the letter until approximately three months later.

**416**

tion provided the court could hold the bond for satisfaction of the lien, "if the Court determines in fact the lien is valid." On June 22, 2000, the trial court granted the sellers' motion for release of the bond reasoning the buyers' failure to provide evidence of the specific amount owed to them for hay eliminated any grounds for the bond.

[¶ 34] Wyo. Stat. Ann. § 29–1–310 (LexisNexis 2001) addresses the satisfaction of a lien when a bond is filed in the district court as occurred in the instant case. A bond guarantees that, if the lien claimant is finally adjudged to be entitled to recover upon the lien, the lien claimant shall be paid at least the amount for which the lien was filed plus costs. Here, the matter was adjudicated, and the trial court properly concluded there was no evidence to support the buyers' claim that they paid a particular amount of money for the hay. It accordingly struck the $10,430 damage award to the buyers. Likewise, there was no basis upon which to support the lien claim, and the bond was properly released.

### D. Specific Performance

[¶ 35] Specific performance will be granted in the court's discretion only where there is a valid, binding contract and the facts and special equities of the situation demand such relief. *Rainbow Oil Company v. Christmann*, 656 P.2d 538, 545 (Wyo.1982). Before a court may order a contract to be specifically performed, the contract terms must be so certain that the court can require the specific thing agreed upon to be done. *Williams v. Dietz*, 999 P.2d 642, 644–45 (Wyo.2000). "The party requesting specific performance must be able to establish that damages for breach are an inadequate and impractical remedy under the circumstances of the case." *Rainbow Oil Company*, 656 P.2d at 545.

[¶ 36] The trial court denied the sellers' request for specific performance of the purchase of the property finding ambiguities existed regarding the amount of hay to be provided by the sellers, the amount of acreage in the state lease, the certificate of title, and finally whether the agreement was a lease with an option to purchase or a contract for purchase. The trial court also concluded the liquidated damage clause in the lease purchase agreement arguably "provided an escape hatch for the [buyers]." We agree with the trial court's denial of specific performance but find the conclusion regarding the effect of the liquidated damages provision erroneous given the contractual provisions allowing multiple remedies.

[¶ 37] Significant to our conclusion specific performance was not warranted is the sellers' failure to show damages were an inadequate or impractical remedy or there were special equities which commanded such relief. The sellers made no showing why damages would not serve as an adequate remedy for the buyers' failure to purchase the property; e.g., significant changes in the real estate market, any unique property characteristics, or the sellers' circumstances that made damages an inadequate remedy. It was incumbent on the sellers to show to the court the equities which entitled them to obtain specific performance, and the court's discretion should not be exercised unless the case is clear. Furthermore, "[o]ne of the basic tenets of equity is that equitable remedies depend upon a showing by the claimant of clean hands." *Fremont Homes, Inc. v. Elmer*, 974 P.2d 952, 959 (Wyo.1999); *see also Hammond v. Hammond*, 14 P.3d 199, 203 (Wyo.2000). Neither party to this transaction had completely clean hands so as to demand equity.

[¶ 38] The jury's response in the special interrogatories, which determined that the agreement was not a contract to purchase the subject real property and therefore the buyers should not have to purchase the property, was a factor equally important to the trial court's ruling and to our resolution of this issue. After hearing all the testimony at trial, the jury made it clear it believed the transaction was essentially a lease with an option to purchase the property.

[¶ 39] Specific performance is only appropriate where the agreed upon terms were sufficiently certain. Ambiguity is found if indefiniteness of expression or double meaning obscure the parties' intent, though disagreement between the parties as

to the agreement's meaning does not give rise to an ambiguity. *Hansen v. Little Bear Inn Company,* 9 P.3d 960, 964 (Wyo.2000). "Whether or not a contract is ambiguous is a question of law for the court." *Collins v. Finnell,* 2001 WY 74, ¶ 15, 29 P.3d 93, ¶ 15 (Wyo.2001). The trial court held the provision regarding the hay to be left by the sellers was ambiguous, and we agree. The parties settled upon the following language: "Lessor shall leave sufficient first cutting hay to winter the above animals during the 1994–1995 winter," as stated in the lease purchase agreement. The ambiguity arises as to whether the sellers should have left sufficient hay to winter the animals during the 1994–95 winter or whether they were merely required to leave all their first-cutting hay, regardless of whether or not it was sufficient to winter the animals. This issue was litigated extensively without resolution. Hence, we conclude this provision created an ambiguity that was appropriate for the trial court to consider in denying specific performance.

[¶ 40] However, we do disagree with the trial court's reliance upon the liquidated damage provision in the lease purchase agreement in concluding specific performance was barred. Although erroneous, the trial court's determination does not undermine our ultimate conclusion that specific performance was properly denied. The liquidated damage provision provides:

(3) If Lessee shall fail for any reason to purchase the demised premises in the manner provided in this lease agreement, Lessor shall retain all earnest money payments and all lease payments received from Lessee pursuant to the provisions of Paragraph (2) of this section as liquidated damages and Lessee shall have no right to receive back any part of such amount.

As we explained in *Walters v. Michel,* 745 P.2d 913, 915 (Wyo.1987), remedies provided in a contract generally are not exclusive. Rather, such remedies are merely some of several remedies which might be pursued by an injured party. 745 P.2d at 915. " 'A subsequently sought remedy will only be barred where it is inconsistent with the remedy initially pursued.' " *Id.* (quoting *Helmer v. Transamerica Title Insurance Co.,* 279 Or.

457, 569 P.2d 10, 14 (1977)). Restatement of Contracts § 382 at 715 (1932) provides in pertinent part: "The bringing of a suit either for specific performance or for compensation in money is not such an election of the remedy sued for as to operate as a bar to a later suit or to an amendment asking for the other remedy with respect to the same breach."

[¶ 41] We note the agreement between the parties did not include a limiting "exclusive remedy" clause which this court determined was significant to our decision in *Walters.* 745 P.2d at 915. In fact, the lease purchase agreement contained the following paragraph found under the heading "Lessor's Remedies of Default by Lessee":

A. Lessee agrees that in the event it should be in default of the performance of any of the terms, covenants, or conditions of this lease agreement, or have otherwise breached this lease agreement, *Lessor may in addition to every remedy now or hereafter available at law or in equity have the rights and remedies set forth in this lease agreement, which shall be deemed cumulative and not exclusive of those available at law or in equity.*

(Emphasis added) On the basis of the foregoing authority and the existence of the qualifying paragraph in the lease purchase agreement, we conclude the remedies of damages and specific performance were not inconsistent and, as a result, both were potential remedies for the sellers to pursue.

[¶ 42] Specific performance is an equitable remedy subject to the court's sound discretion. *Rainbow Oil Company,* 656 P.2d at 545. We clarified the definition of an abuse of discretion when we stated the core of our inquiry must reach "the question of reasonableness of the choice made by the trial court." *Vaughn v. State,* 962 P.2d 149, 151 (Wyo.1998). In *Vaughn,* we confirmed that judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means exercising sound judgment with regard to what is right under the circumstances and without doing so arbitrarily or capriciously. *Id.* We can discern no abuse of discretion in the trial court's denial of specific performance.

## E. Jury Verdict

[¶ 43] The sellers claimed the jury rendered an inconsistent verdict and sought a judgment as a matter of law or, in the alternative, a new trial pursuant to W.R.C.P. 50 and 59(a). On appeal, they challenge that portion of the verdict which determined that, while there was no contract entered into between the parties for the purchase of the property, the contract terms were fair and reasonable, understandable, and reasonably set forth and the buyers knew or should have known of the terms when they entered into the contract. As a further indication of inconsistency, the sellers point to the jury's decision to award them damages, despite its finding that they did not comply with the contract. When the verdict and special interrogatories are reviewed in full, the jury's logic is apparent.[5] The jury returned a ver-

5. The special interrogatories and verdict form were not well thought out and were overly detailed. They addressed issues which were not in contention and failed to distinguish between a contract to purchase and a lease purchase agreement. In actuality, the jury did an admirable job applying the facts to the questions asked and reaching an equitable and sound final judgment. The forms it had to contend with presented the following questions:

SPECIAL INTERROGATORIES

*Interrogatory No. 1:* Do you find that the [buyers] entered into a Purchase Contract to purchase the [sellers'] Ranch East of Greybull, Wyoming[?]

Yes_____ No__X__

*Interrogatory No. 2:* Do you find that the [sellers'] Ranch has 1075 acres of water rights from Shell Canal Company together with water rights from the Lake Adelaide Reservoir[?]

Yes__X__ No_____

*Interrogatory No. 3:* Do you find that at the time of the agreement entered into between the parties in October, 1994, that there were approximately 600 acres in production with another 200 acres that could have been put into production[?]

Yes__X__ No_____

*Interrogatory No. 4:* Do you find that [the buyers] adequately maintained and cared for the real property which is the subject of this action including the gates, fences and corrals[?]

Yes__X__ No_____

*Interrogatory No. 5:* Do you find that the [buyers] should be required to perform [their] contract with the [sellers] and purchase the [sellers'] Ranch according to the terms and conditions agreed upon by the parties to that agreement[?]

Yes_____ No__X__

*Interrogatory No. 6* [:] Did the [sellers] fail to disclose any material aspects of the property of which they were aware?

Yes_____ No__X__

VERDICT FORM

WE THE DULY EMPANELLED JURY in the above-captioned case do hereby find as follows:

1. Do you find that the [sellers] have established by a preponderance of the evidence that the [buyers] entered into a contract with them for the purchase of their ranch east of Greybull, Wyoming?

[ ]Yes [X]No

If you marked yes, then proceed to number 2. If you marked no, please proceed to number 11.

2. Do you find that the terms of the contract were fair and reasonable on the date that it was entered into?

[X]Yes [ ]No

3. Do you find that the terms of the contract were understandable when it was entered into?

[X]Yes [ ]No

4. Do you find that the terms of the contract were reasonably set forth in the documents utilized by the parties?

[X]Yes [ ]No

5. Do you find that the [sellers] reasonably relied upon the terms of the contract entered into with the [buyers]?

[ ]Yes [X]No

6. Do you find that [the buyers] reasonably knew or should have known of the terms of the contract as of the date it was entered into?

[X]Yes [ ]No

7. Do you find that the [sellers] complied with the contract entered into between the parties insofar as possible?

[ ]Yes [X]No

8. Do you find that [the buyers] did not comply with the terms of the agreement entered into with the [sellers] and therefore that they breached their contract for the purchase of the [sellers'] ranch?

[ ]Yes [X]No

If you marked yes, then proceed to number 9. If you marked no, please proceed to number 11.

9. Do you find that the [sellers] have been damaged by the breach of contract on the part of the [buyers]?

[X]Yes [ ]No

If you marked yes, then proceed to number 10. If you marked no, then proceed to number 11.

10. What, if any, damages do you award to the [sellers] as a result of the breach of contract by the [buyers] for:

a. Reduction in value of cattle

$__16,730.39_____

b. Sale value of calves

$___6,346.42_____

dict finding that the real estate transaction created a lease for one year with an option to buy rather than a contract for purchase, and it concluded the buyers had caused the sellers some damages by failing to make certain payments required under the agreement.

 [¶ 44] The jury specifically asked whether it would be allowed to award damages to the sellers based on the buyers' actions under the lease purchase agreement, and the trial court instructed the jury, with the agreement of both parties, to determine damages despite its finding that a contract to purchase the property did not exist. Neither party can now be heard to complain about this "inconsistency."

 [¶ 45] The trial court did, however, alter the jury's answer to the question of whether the parties entered into a contract for the purchase of the real property to an affirmative response. The court reasoned: "[T]here is no reasonable basis upon which the jury could have found that there was not a contract under which the [buyers] agreed to purchase the property that was involved." We conclude the trial court's action was unnecessary and the verdict was consistent. Our standard of review is *de novo;* thus, we will not give deference to the trial court's decision. *Jurkovich v. Tomlinson,* 905 P.2d 409, 411 (Wyo.1995). If a jury acted unreasonably or returned a verdict contrary to the one reasonable conclusion that could be reached, a judgment as a matter of law may be granted. This jury did neither in this case.

 [¶ 46] Although the jury concluded there was no contract for purchase, it was not precluded from determining both the sellers and the buyers failed to comply with certain terms of the lease purchase agreement. It was the lease portion of the contract the jury determined the sellers breached by failing to leave sufficient hay and the buyers breached by failing to make required payments. From this perspective, the verdict form was entirely consistent. Each question subsequent to the jury's determination that there was no contract for purchase logically addressed the lease portion of the agreement. Given the convoluted nature of the verdict form and the special interrogatories, to which both parties agreed, it is a testament to the wisdom of the jurors in general that this jury could make its way through the questions and answer them in a manner consistent with the evidence. Rather than belatedly claiming the jury was confused, the parties' counsel and trial court should be held accountable for creating and acquiescing to such an unartfully drafted jury verdict form. Nonetheless, reviewing the entirety of the jury verdict, we conclude the jury was consistent and rendered a proper verdict.

[¶ 47] Upon this conclusion, we hold the trial court did not abuse its discretion by denying the sellers a new trial. The trial court's alteration of the jury's answer that no purchase contract was entered into was not necessary to make the verdict consistent and did not change the jury's ultimate conclusion.

c. Interest paid by the [sellers] to Farm Credit
$ _____0_____

d. Insurance paid by the [sellers]
$ _____0_____

e. Shell Canal Company assessments paid by the [sellers]
$ _____0_____

f. Miscellaneous expenses
$ _____0_____

g. Lease expense
$ ____196.00____

h. Real property taxes pa[i]d by the [sellers] to Big Horn County
$ ___9,224.48___

i. Damage to equipment
$ _____0_____

j. Other amounts, if any
$ _____0_____

11. Do you find that the [sellers] should compensate the [buyers] for hay which the [sellers] should have left to provide winter feed for their animals?

[X]Yes [ ] No

If you marked yes, then proceed to paragraph 12. If you marked no, then sign the Verdict Form and return it to the Court.

12. What amount if any, do you award to the [buyers] for the hay[?]
$ _10,430.00_____

DATED this 10th day of November, 1999.

## F. Both Parties' Requests for Attorney's Fees and Costs

[¶ 48] Both parties filed motions for attorney's fees and costs relying on the lease purchase agreement's terms. The sellers also sought costs pursuant to Rule 501(a)(1) of the Uniform Rules for District Courts of the State of Wyoming. The trial court denied each request concluding that neither party "prevailed" in this maze of claims and counterclaims, and we agree.

[¶ 49] The sellers' request for costs under U.R.D.C. 501(a)(1), based on the buyers' failure to object to the demand, fails because the parties entered into a contractual agreement regarding costs. In *Snyder v. Lovercheck*, 992 P.2d 1079, 1091 (Wyo.1999) (emphasis added and citations omitted), we said:

> Costs are purely statutory, as they did not exist at common law. However, this is true only in the absence of an agreement concerning costs between the parties. Parties to an agreement are free to bargain for payment of costs, just as they can bargain for payment of attorney's fees. *The parties' agreement to an allocation of costs is not subject to the provisions of U.R.D.C. 501.*

In the face of a valid contractual agreement imposing a clear standard, we will not apply the provisions of U.R.D.C. 501(a)(1).

[¶ 50] In Wyoming, we follow the American rule which states each party is responsible for his own attorney's fees in the absence of an express contractual or statutory provision to the contrary. *McGuire v. Lowery*, 2 P.3d 527, 533 (Wyo.2000). Even in the face of a valid contractual provision for attorney's fees, we have clearly stated that a trial court has the discretion to exercise its equitable control to allow only such sum as is reasonable or the court may properly disallow attorney's fees altogether on the basis that such recovery would be inequitable. *Id.* at 534. Here, the parties rely on two express contract provisions regarding attorney's fees and costs. First, the counteroffer incorporated substantially all the terms and conditions of the offer including:

> In the event that any party shall become in default or breach of any of the terms of this Contract, such defaulting or breaching party shall pay all reasonable attorney's fees and other expenses which the non-breaching or nondefaulting party may incur in enforcing this Contract with or without suit. This provision shall not limit any other remedies to which the parties may otherwise be entitled.

Second, the lease purchase agreement provided in pertinent part: "In the event that any action is filed in relation to this lease agreement, the unsuccessful party in the action shall pay to the successful party, in addition to all the sums that either party may be called on to pay, a reasonable sum for the successful party's attorney fees." In light of its various rulings and the jury's verdict, the trial court determined that neither the sellers nor the buyers could be considered the prevailing party; therefore, it denied the cross-motions for attorney's fees and costs. We conclude the trial court made an equitable decision and did not abuse its discretion. Contrary to the parties' divergent opinions that the prevailing party's identity was clear, the record tells a quite different story. We hold the trial court exercised sound judgment in concluding neither party prevailed and denying all requests for attorney's fees and costs.

## G. Adequacy of Damages

[¶ 51] The sellers insist they suffered extensive damages as a result of the demise of the real estate transaction. The jury awarded $32,497.29 to compensate the sellers for reduction in the value of the cattle and the sale value of the calves, the real property taxes paid by the sellers, and lease expenses. The trial court determined the evidence justified the award of these damages. The sellers contend the jury neglected to consider all the evidence presented which identified the actual expenses sustained by the sellers—damages which were significantly more than the jury awarded.

[¶ 52] In general, the legal remedy for a breach of contract is the award of damages designed to place the plaintiff in the same position in which he would have been

had the contract been fully performed, less proper deductions. *BHP Petroleum Company, Inc. v. Okie,* 836 P.2d 873, 876 (Wyo. 1992). "The jury's determination of the amount of damages is inviolate absent an award which is so excessive or inadequate as to shock the judicial conscience and to raise an irresistible inference that passion, prejudice, or other improper cause had invaded the trial." *Brittain v. Booth,* 601 P.2d 532, 536 (Wyo.1979); *see also Carlson v. BMW Industrial Service, Inc.,* 744 P.2d 1383, 1390 (Wyo.1987). "This standard recognizes a range within which the verdict must fall and recognizes the judge, who has observed, tried, and compared numerous cases of this kind, as knowledgeable in determining a reasonable value of damages to be awarded." *Coulthard v. Cossairt,* 803 P.2d 86, 92 (Wyo. 1990), *abrogated on other grounds by Vaughn,* 962 P.2d at 151. The trial court instructed the jury as follows: "You may award to the [sellers] all sums that you find reasonable to compensate them for their damages and to compensate them for breach of contract by the [buyers] and to compensate them for damages that they have suffered at the hands of [the buyers]."

[¶ 53] The following is that portion of the jury's verdict which addressed the sellers' damages:

a. Reduction in value of cattle
$ 16,730.39

b. Sale value of calves
$ 6,346.42

c. Interest paid by the [sellers] to Farm Credit
$ 0

d. Insurance paid by the [sellers]
$ 0

e. Shell Canal Company assessments paid by the [sellers]
$ 0

f. Miscellaneous expenses
$ 0

g. Lease expense

$ 196.00

h. Real property taxes pa[i]d by the [sellers] to Big Horn County
$ 9,224.48

i. Damage to equipment
$ 0

j. Other amounts, if any
$ 0

Plaintiff's Exhibit 58 supports the jury's award of $16,730.39 for the reduction in the value of the cattle. The exhibit identifies the contractual value of the cattle which were subject to the lease purchase agreement. The value was $56,500 from which the $39,769.61 sale value was deducted, resulting in a total loss of $16,730.39—the amount the jury awarded to the sellers. Likewise, a check to the buyers in the amount of $6,346.42 supports the jury's award for the sale value of the calves. The testimony at trial showed this amount represented proceeds from the Worland Livestock Auction for the sale of the leased first-year calves, which the parties' agreement recognized would belong to the sellers in the event of default. Further, the jury's award for lease expenses reflected the sellers' 1995 renewal fee payment. This is consistent with the jury's determination that the lease purchase agreement represented a one-year lease.

[¶ 54] We are aware that the jury failed to award an amount to compensate for other damages the sellers claim they suffered. However, this court may not substitute its own judgment for the collective judgment of the jurors. *Archuleta v. Valencia,* 871 P.2d 198, 202 (Wyo.1994). In *Archuleta,* we cited the following passage:

"The Court is not free to set aside the verdict merely because the judge might have awarded a different amount of damages, but it may do so if the proceedings have been tainted by appeals to prejudice or if the verdict, in light of the evidence, is so unreasonable that it would be unconscionable to permit it to stand."

*Id.* (quoting 11 Charles Alan Wright & Arthur R. Miller, Federal Practice and Proce-

dure § 2807 (1973)). This elevated standard of review does not allow this court to alter the damages awarded to the sellers by the jury. At trial, the jury heard ample evidence to support the amount awarded, and we can discern no evidence that passion or prejudice influenced it. The sellers sought approximately $135,000 in damages to reimburse them for expenses they incurred related to the property during the course of the parties' dealings. Those expenses not awarded by the jury as damages are fairly allocated to a lessor who retains title to the property and benefits of ownership and are not contractually allocable to a lessee who declined to purchase the property. We are satisfied the jury could have inferred from all the facts presented that $32,497.29 was an appropriate award to the sellers and was within an acceptable range. We conclude the jury verdict was not so insufficient as to shock our judicial conscience.[6]

### H. Breach of Contract

[¶ 55] The sellers challenge the jury's determination that they did not comply with the contract as not being supported by the evidence. When we review the sufficiency of the evidence, we assume the evidence in favor of the successful party is true, leaving out of consideration entirely the evidence in conflict and assigning every favorable inference to the successful party's evidence that can be reasonably and fairly drawn from it. *Murray*, ¶ 8. It is the jury's duty to ascertain the facts, reconcile conflicts therein, and draw its own inferences if more than one inference is permissible. *Id.* "When the facts permit the drawing of more than one inference, then it is for the jury to choose which one will be used; and, if supported by substantial evidence, the jury's choice will be conclusive." *Id.*

[¶ 56] The jury made it clear it believed the sellers should have left sufficient hay to feed the cattle throughout the winter. In the verdict form, the jury answered the following question in the affirmative: "Do you find that the [sellers] should compensate the [buyers] for hay which the [sellers]

should have left to provide winter feed for their animals?" Accordingly, the jury awarded the buyers $10,430 for the hay. Sufficient evidence exists on this issue to support the jury's determination that the sellers failed to comply with this provision of the contract.

[¶ 57] The addendum provided as follows: "1st year Seller to leave enough first cutting hay to winter above cows for this Purchaser." Mr. Wentland testified that "above cows" referred to the animals that he leased to the buyers. This language was subsequently changed to provide "Lessor shall leave sufficient first cutting hay to winter the above animals during the 1994–1995 winter," as stated in the lease purchase agreement. Mr. Wentland also testified that "enough" is synonymous with "sufficient." The trial court described the controversy at issue as follows:

> [W]hether it means that the seller was only to leave all of the first-cutting hay regardless of whether it was enough to winter the seller's animals during the 1994–'95 winter, or whether it meant that the seller was to leave enough hay to winter the above animals during that entire winter. It's an ambiguity in the contract, an issue that never has really been resolved between the parties.

The sellers conceded that, although they left all the first-cutting hay, they did not leave enough first-cutting hay to feed the animals for the winter. Applying our standard, we conclude there was sufficient evidence for the jury to reconcile the facts and draw the inference that the sellers breached the first-cutting hay provision in the contract. Therefore, the jury's determination is beyond our review.

### CONCLUSION

[¶ 58] In summary, we find the trial court did an admirable job of sifting out the unsupported claims in this complicated case by granting partial summary judgment, granting the motions for judgment as a matter of law, releasing the bond, and denying specific performance and both parties' requests for attorney's fees and costs, and we affirm those

---

6. The buyers asked this court to reduce the amount of the sellers' award on the basis of an exhibit not admitted at trial, and we decline to do so.

rulings. The court also properly denied the sellers' request for a new trial or a judgment as a matter of law. In addition, we affirm the jury verdict and judgment which awarded adequate damages to the sellers as a result of the buyers' failure to make certain payments under the lease purchase agreement. Finally, we hold there was sufficient evidence for the jury to conclude the sellers breached the lease purchase agreement.

[¶ 59] Affirmed.