**2004 WY 38**

**Evelyn WORMAN, Appellant (Plaintiff),**

v.

**Patty CARVER, d/b/a H & R Block and H & R Block Tax Services, Inc., Appellees (Defendants).**

**No. 03–117.**

Supreme Court of Wyoming.

April 12, 2004.

Representing Appellant: Drew A. Perkins of Perkins & Powers, P.C., Casper, Wyo-

ming; and Vance Countryman of Vance T. Countryman, P.C., Lander, Wyoming. Argument by Mr. Countryman.

Representing Appellees: Rex O. Arney and Timothy M. Stubson of Brown, Drew & Massey, LLP, Casper, Wyoming. Argument by Mr. Stubson.

Before HILL, C.J., and GOLDEN, LEHMAN, KITE, and VOIGT, JJ.

HILL, Chief Justice.

[¶ 1] In an earlier opinion, we remanded this case to the district court for the trial of claims of alleged wrongful misconduct by Patty Carver (Carver) and H & R Block (Block) that resulted in tax penalties and interest being assessed against Evelyn Worman (Worman). *Worman v. Carver,* 2002 WY 59, 44 P.3d 82 (Wyo.2002) (*Worman I* ). A trial was held February 10–14, 2003. The trial resulted in a verdict favorable to Worman, awarding her both general and punitive damages. Carver and Block asked the district court to grant a motion for judgment as a matter of law under W.R.C.P. 50. The district court granted the motion, finding that there was not sufficient evidence to support the jury's verdict. We will affirm.

**ISSUES**

[¶ 2] Worman poses this issue in very simple terms:

Was there sufficient evidence to support the jury's verdict in favor of [Worman].

Carver and Block articulate the issues more broadly:

1. Whether ... Worman presented any evidence of damages where this Court has previously held, and where the jury was instructed, that she was entitled only to an award of interest and penalties and where she provided no evidence that she paid no [sic] interest and penalties as a result of [Carver's and Block's] conduct.

2. Whether ... Worman established causation where the only evidence presented at trial established that amounts unreported on her income tax returns were the result of her husband's willful misrepresentations and where no evidence was in-

troduced to establish that ... Carver had been provided information sufficient to determine that the Wormans had taken, but not reported[,] income.

3. Whether ... Worman established a claim for punitive damage against ... Block where [Worman] presented only limited evidence regarding its involvement in this case and where no evidence of willful and wanton misconduct was raised.

## FACTS AND PROCEEDINGS

[¶ 3] In *Worman I,* we set out these background facts:

Lee and Evelyn worked for Farmers Cooperative Association (Farmers Co-op) in Gillette. Lee was the general manager, and Evelyn was a bookkeeper. Ms. Carver operated an H & R Block tax service franchise (Gillette H & R Block) in Gillette.

In 1982, Lee became involved in a trucking company known as Whelchel Trucking with his brother-in-law, Ernie Whelchel (Ernie). Ernie was married to Lee's sister, Dorothy Whelchel (Dorothy). The Whechels divorced in 1992. Lee and Ernie disagreed over the extent of Lee's involvement in the trucking company. Lee claimed he was a partner in Whelchel Trucking while Ernie maintained Lee simply loaned him money for the business.

In any event, Whelchel Trucking filed partnership tax returns for several years, listing Ernie and Lee as partners. Gillette H & R Block prepared the Whelchel Trucking returns and the Wormans' individual returns. In 1989, Ernie instructed Ms. Carver not to prepare any more partnership tax returns for Whelchel Trucking.

Whelchel Trucking leased its trucks exclusively to Farmers Co-op. In 1991, Lee began writing checks from the Farmers Co-op checking account to his personal account. He wrote on the check stubs that the payments were to Whelchel Trucking, but the checks were made out to his personal account. Lee did not report these funds as income on his personal income tax returns.

The United States charged Lee with four counts of willfully submitting false tax returns in violation of 26 U.S.C. § 7206(1) for the years of 1991 through 1994. Lee was tried before a jury in the federal district court in August 1998, and the jury found him guilty on all four counts. The federal district court denied Lee's motion for a judgment of acquittal notwithstanding the verdict, and Lee appealed. The United States Court of Appeals for the Tenth Circuit affirmed Lee's conviction on April 6, 2000. *United States v. Worman,* No. 98–8102, 2000 WL 358384 (10th Cir. Apr.6, 2000). [Footnote omitted.]

The Wormans commenced the present action after Lee was convicted of filing false tax returns. They claimed Ms. Carver was negligent in preparing their tax returns and H & R Block Tax Services, Inc. was negligent in its supervision and training of Ms. Carver. In addition, they asserted claims for negligent misrepresentation, fraud, and *respondeat superior.* The Wormans maintained Lee was convicted of tax fraud because of the appellees' wrongful actions and, as a result, they incurred damages including attorneys' fees in the criminal case, loss of credibility and reputation, loss of value from a civil suit, civil tax penalties and interest, and emotional distress. Evelyn also presented a separate claim for loss of Lee's consortium while he served his prison sentence.

*Worman,* 2002 WY 59, ¶¶ 3–8, 44 P.3d 82, ¶¶ 3–8 (Wyo.2002).

[¶ 4] In *Worman I,* we held that Worman was not in privity with her husband with regard to her individual liability for civil tax penalties. In addition, we held that public policy did not prevent Worman from presenting her independent claim for civil tax penalties and interest, because she may have incurred civil tax penalties and interest even if her husband had not been convicted of a criminal act. *Worman,* ¶¶ 34 and 38.

[¶ 5] The central issues in the trial were whether Worman paid "penalties and interest" to the Internal Revenue Service (IRS) because of the negligent acts of Carver and

Block,[1] and whether Carver's and Block's negligence was willful and wanton so as to entitle Worman to punitive damages. The jury found in favor of Worman, awarding her $2,500.00 in general damages and $100,000.00 in punitive damages. The evidence upon which Worman[2] relies to support her claim for general damages is that once Worman became aware that the IRS was investigating her tax returns for the years 1991–94, she paid in $30,000.00 to the IRS in order to stop the accumulation of penalties and interest on taxes that were likely due. That payment was made in February of 1996. A recomputation of Worman's taxes revealed that she owed about $27,500.00 in additional taxes. Worman was unable to recover the $2,500.00 difference because by the time she applied for the refund the statute of limitations had run for the tax years 1991–94. It was undisputed that there was a $2,500.00 "loss" to Worman, but even Worman's expert witness characterized it as a "loss" and not specifically as "penalties and interest." The question of whether Worman's "loss" was in the nature of penalties and interest is very important because of the instructions that were given to the jury without objection. Instruction No. 14 provided this direction to the jury:

Evelyn Worman claims that she incurred damage in the form of penalties and interest owed and paid to the Internal Revenue Service. If you find that she is entitled to damages, you may award her only such penalty and interest as a preponderance of the evidence proves she incurred and was caused by action or inaction of one or both Defendants.

You are not permitted to award speculative damages. No claim is made for any other damage at this point of the case, and you are not permitted to award damages for anything other than penalties and interest owed and paid to the Internal Revenue Service by Evelyn Worman.

[¶ 6] Included in the instructions packet was this instruction entitled "Explanation of Civil Case:"

In this case Carver (or her employees) prepared personal income tax returns for [Worman] and her husband. Evelyn Worman claims that Carver negligently failed to include income her husband received on their joint income tax returns for the years 1989 through 1994. She claims that Carver is responsible for the tax penalties and interest she had to pay because that income was not reported. She claims that H & R Block is responsible for the results of Carver's negligence because:

1) Carver was H & R's agent.

2) Carver was a partner with H & R.

3) H & R misrepresented (fraudulently or negligently) the quality of its franchises.

4) H & R failed to properly train or control Carver.

Worman also seeks punitive damages.

[Carver and Block] claim that [Worman's] husband, Lee Worman, caused and is responsible for the under-reported income on [her] income tax returns. They also assert that Carver was not negligent. H & R claims that it did not misrepresent anything, that it has no duty to train or supervise franchises, that it was not a partner with Carver and that Carver was not H & R's agent.

[¶ 7] The jury was also instructed that Worman's husband had been convicted of filing false tax returns, which were the same returns that are the subject of this case, and

1. For a general discussion of this subject matter *see*, Phillip E. Hassman, Annotation, *Tax Preparer's Liability to Taxpayer in Connection With Preparation of Tax Return*, 81 A.L.R.3d 1119(1977 and Supp.2002); also *see Linck v. Barokas & Martin*, 667 P.2d 171 (Alaska 1983); and *Billings Clinic v. Peat Marwick Main*, 244 Mont. 324, 797 P.2d 899 (1990).

2. The application of the "innocent spouse" provision of the Internal Revenue Code was not a factor in this case. *See* James John Jurinski, Annotation, *Spouse's Receipt of "Substantial Benefit" as Condition Precluding Entitlement to "Innocent Spouse's" Relief Under 26 USCS § 6013(E)*, 134 A.L.R. Fed. 415 (1996 and Supp. 2002); and Jason B. Binimow and G. Knapp, Annotation, *Construction and Application of 26 U.S.C.A. § 6015(b)(1)(C), Requiring That Spouse Not Know of Omission of Gross Income From Joint Tax Return to Obtain Innocent Spouse Exemption From Liability for Tax*, 161 A.L.R. Fed. 373 (2000 and Supp.2002).

that her husband did not rely in good faith on any information provided to him by a tax preparer.

[¶ 8] Because the crux of this appeal is whether or not there was sufficient evidence to support the verdict in favor of Worman, we will incorporate any other additional facts pertinent to the resolution of that issue in our discussion of it.

## STANDARD OF REVIEW

[¶ 9] The applicable standard of review has been ably and comprehensively summarized:

"Despite the fact that judgment as a matter of law should be granted cautiously and sparingly, the district court has an obligation to direct entry of such a judgment where there is legally insufficient evidence to support a verdict on a particular issue." *Sayer v. Williams*, 962 P.2d 165, 167 (Wyo. 1998). We review the decision to grant or deny a motion for a judgment as a matter of law *de novo*. *Sundown, Inc.* [*v. Pearson Real Estate Co., Inc.*], 8 P.3d [324] at 330 [(2000)]. Under our *de novo* standard, we undertake a full review of the record without giving deference to the trial court's views. *Wyoming Medical Center, Inc. v. Murray*, 2001 WY 63, ¶ 7, 27 P.3d 266, ¶ 7 (Wyo.2001). The test is whether the evidence is such that, without the witnesses' credibility being weighed or the weight of the evidence otherwise being considered, there can be but one conclusion as to the verdict that reasonable persons could have reached. *Id.* We view the evidence in the light most favorable to the nonmoving party and give that party the benefit of all the reasonable inferences which may be drawn from the evidence. *Id.* When the facts presented permit the drawing of more than one inference, it is for the jury to choose which will be used. *Id.* "If the inferences favorable to the movant are subject to doubt, or if parallel inferences can be drawn, the motion appropriately is denied." *Id.*

*Dewey v. Wentland*, 2002 WY 2, ¶ 28, 38 P.3d 402, ¶ 28 (Wyo.2002); *and see generally* 9A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure: Civil 2d* § 2540 (1995 and Supp.2003).

## DISCUSSION

[¶ 10] In this appeal, Worman contends that there were many other sources of "damages" or "loss" to her, other than just "penalties and interest." The instructions, however, fixed the limits of damages in this case to "penalties and interest," and our analysis of the issue will not stray beyond that boundary. Our comprehensive review of the record revealed that the jury's award of general damages in the amount of $2,500.00 can only be attributed to the very limited evidence that Worman paid in $30,000.00 to cover unpaid taxes so that penalties and interest would not further accumulate on that unpaid tax, coupled with testimony that the tax actually due the IRS would have been about $27,500.00. There is no evidence in the record that the IRS imposed "penalties and interest" on Worman in a formal sense. On the contrary, the communications Worman received from the IRS were clear that she was deprived of the $2,500.00 because "the period in which we can legally assess tax has expired" for tax years 1991, 1992, and 1994. With respect to tax year 1993, the IRS explained that Worman's "claim" was disallowed because such claims cannot be allowed "if you file the claim more than three years after you file the return, or more than two years after you pay the tax, whichever is later."

[¶ 11] The instructions to the jury did not define what was meant by "penalties and interest." In some respects, those words are a phrase of art in the context of income taxation. *See* Michael D. Rose, John C. Chommie, *Federal Income Taxation*, §§ 13.24—13.30 (3rd ed.1988). There is no evidence in the record of this case that the IRS imposed "penalties or interest" as contemplated by tax law. However, the jury's deliberations were not restricted by an instruction to that effect. Therefore, we must view the phrase "penalties and interest" as the jury, in this context, might more generally have understood it. The definition of "penalty" which we deem most pertinent in this sense is: "a sum of money made recoverable in a civil action by the state ... for

**1250**

the less serious offenses not mala in se—compare FINE"; "disadvantage, loss, or hardship due to some action (as transgression or error)." *Webster's Third New International Dictionary* 1668 (1986). The pertinent definition of "interest" is this: "the price paid for borrowing money generally expressed as a percentage of the amount borrowed paid in one year ... the money so paid...." *Id.* at 1178. In this regard, we have examined the record with great care and the evidence is clear that the $2,500.00 at issue was retained by the IRS because the time in which such tax payments may be reclaimed by a taxpayer had expired. We agree with the district court that reasonable jurors could not have concluded that it was retained by the IRS as a penalty or as interest. To the extent Worman's evidence demonstrated negligence on the part of Carver and Block, and it cannot be denied that there was evidence to support such a claim, that negligence cannot be associated with Worman's failure to reclaim money that may have been owed her by the IRS, nor can it be categorized as "penalties or interest" even under the relaxed dictionary definitions of those words. Thus, the district court's decision to grant the motion for judgment as a matter of law was correct.

[¶ 12] Having held that there is insufficient evidence to sustain the jury's finding of general damages, we need not consider the issues relating to causation or punitive damages.

## CONCLUSION

[¶ 13] The order of the district court granting judgment as a matter of law in favor of Carver and Block is affirmed.