2007 WY 3

**Christine WITHERSPOON,
Appellant (Plaintiff),**

v.

**TETON LASER CENTER, LLC, a Wyoming Limited Liability Company; and Maura Lofaro, M.D., Appellees (Defendants).**

**No. 06–11.**

Supreme Court of Wyoming.

Jan. 10, 2007.

Representing Appellant: David F. DeFazio of DeFazio Law Office, Jackson, Wyoming.

Representing Appellees: W. Henry Combs III and Kathleen Swanson of Murane & Bostwick, LLC, Casper, Wyoming. Argument by Ms. Swanson.

Before VOIGT, C.J., and GOLDEN, HILL *, BURKE, JJ., and KALOKATHIS, D.J.

HILL, Justice.

[¶ 1] Christine Witherspoon (Witherspoon) filed an action alleging that Dr. Maura Lofaro and Teton Laser Center, LLC (collectively the Defendants) had negligently administered an intense pulsed light (IPL) hair removal treatment causing her to suffer burning and scarring. The parties entered into a stipulation allowing Witherspoon's designated expert witness to testify by telephone. After the expert's testimony at trial, the Defendants alleged that Witherspoon had violated the terms of the stipulation and requested that the expert's testimony be stricken. The district court agreed and instructed the jury to disregard the testimony. After Witherspoon rested her case, the Defendants moved for a judgment as a matter of law pursuant to W.R.C.P. 50(a) (LexisNexis 2006) on the grounds that there was no evidence produced establishing that the Defendants

had breached a duty to Witherspoon. The court granted the motion. On appeal, Witherspoon challenges the district court's ruling striking the testimony of her expert witness and the grant of the Rule 50 motion. We conclude that the district court abused its discretion in striking the expert's testimony, that the error was prejudicial and, therefore, reverse and remand for a new trial.

## ISSUES

[¶ 2] Witherspoon's brief fails to contain a statement of the issues presented for review in violation of W.R.A.P. 7.01(d) (LexisNexis 2006). Pursuant to W.R.A.P. 1.03 (LexisNexis 2006) we would be justified in refusing to consider the claims raised by Witherspoon. *37 Gambling Devices (Cheyenne Elks Club and Cheyenne Music and Vending, Inc.) v. State*, 694 P.2d 711, 713 (Wyo.1985). While tempted to do so, we have decided to address the contentions raised by Witherspoon given that the issues she has raised are meritorious and readily identifiable from her brief. *Id.*; see also *Montoya v. Navarette–Montoya*, 2005 WY 161, ¶ 4, 125 P.3d 265, 268 (Wyo.2005). The Bar should keep in mind, however, that we will not always be so tolerant about such violations of our Rules of Appellate Procedure. *Id.*; see also *Cline v. Safeco Ins. Companies*, 614 P.2d 1335, 1337 (Wyo.1980).

[¶ 3] For purposes of our review, we accept the issues as framed by the Defendants:

A. Whether the District Court properly excluded the testimony of Lorenzo Kunze based upon [Witherspoon's] violation of the parties' stipulation for such testimony?

B. Whether the District Court properly entered Rule 50 Judgment as a Matter of Law when no evidence existed to support a reasonable jury's determination of a breach of duty and causation of damages?

## FACTS

[¶ 4] Witherspoon filed an action against the Defendants alleging that Dr. Lofaro had negligently administered an IPL hair removal treatment resulting in burns and perma-

---

* Chief Justice at time of oral argument.

nent scarring on Witherspoon's stomach. Witherspoon designated Lorenzo Kunze as an expert witness. Kunze is the owner of Rocky Mountain Laser College in Denver, Colorado, where he teaches laser hair removal. After taking Kunze's deposition, the Defendants moved to strike his testimony and for summary judgment on the grounds that Kunze was not a licensed medical practitioner. The district court denied the motion concluding that since a person could perform IPL hair removal without a medical license, Witherspoon's claim was not based on medical malpractice.

[¶ 5]   Just prior to trial, Witherspoon filed a stipulated motion on behalf of the parties wherein it was agreed that Kunze could testify by telephone:

> Lorenzo Kunze is Plaintiff's expert witness. Mr. Kunze lives and works in Denver. He runs an active laser hair removal business and training college. Flight schedules between Jackson and Denver are such that it would be unlikely that Mr. Kunze could travel and testify in one day.

The morning of the trial, the district court approved the stipulation after inquiring into the reasons for the telephonic testimony. During cross-examination of Kunze, the following exchange took place between Kunze and counsel for the Defendants:

Q:   Were you asked to come to Wyoming?

A:   Was I asked to come there?

Q:   Yes.

A:   I'm assuming I was asked sometime. I think it was because of my time frame I couldn't make it.

Q:   The question is: Were you asked to come to Wyoming? I believe that that's a yes or no answer. Were you?

A:   Yes.

Q:   When were you asked?

A:   When you were in my office.

Q:   And you haven't been asked to come to Wyoming since then?

A:   Yes. I was asked a couple [of] days ago. I was asked.

Q:   What were you asked, specifically?

A:   Would there be any way for me to come down, and I said no.

[Defense counsel]: I move that the entire testimony be stricken on that answer alone, Your Honor.

[Plaintiff counsel]: Your Honor, he stipulated to this.

[Defense counsel]: I stipulated to this based on your representations to me.

The court excused the jury and the following colloquy took place:

[The court]: Okay. The jury's out. Oh, counsel. [Defense counsel], first of all, I guess I was surprised that this, you know, were in agreement that—that Mr. Kunze could testify by telephone because it's been very awkward, as has been noted for the last hour. But, [defense counsel], you did stipulate that Mr. Kunze could testify by telephone?

[Defense counsel]: My stipulation was based upon [plaintiff counsel's] representation to me that an airline ticket had been purchased but Mr. Kunze did not want to come, he would, but he didn't want to come because he was going to have to be out of the office not one day but two days, and would I please stipulate to it so that they could cancel the airline ticket and not make him be out of the office for two days. And that was a complete misrepresentation, and had I known the truth I would have never stipulated to this, Your Honor.

This is a fraud on me, it's a fraud on the Court, and this testimony needs to be stricken from the record in its entirety.

[The court]: Okay, wait a minute. [Plaintiff counsel], did you represent that to [defense counsel]?

[Plaintiff counsel]: I represented that we had a reservation and I did have a reservation on Delta Airlines, and I can get you the specific flight numbers and times, but I did not represent that we had represented we had purchased the ticket. And in exchange for this stipulation, Mr. Kunze [sic-defense counsel] has been allowed to introduce evidence of this tanning bed treatment which is based on discovery he conducted well passed [sic] the discovery cutoff time, so [defense counsel] got something in exchange for that. And I never said that it was impossible or that Mr.

Kunze was unavailable. I said that it was inconvenient for him because there was no way for him to come up here and do it in one day.

From Denver to—actually, it's United Airlines, they [have] one flight that leaves at 9:30, and the last one departs Jackson Hole at 4:30. So he would have had to have stayed over night and it would have been difficult for him in his practice to be gone overnight and to miss two days of work. And that's exactly what I told [defense counsel].

And I also told him about Kellie Allen. And Kellie is—anyhow, we're not talking about her now, but I was very honest and straight-forward with [defense counsel]. I feel like I'm being sandbagged right now, and it's just not appropriate.

I was very clear, straight forward and honest with him, and there is no fraud being committed here. There was no misrepresentation. I sent a letter to [defense counsel] confirming the fact that he had stipulated to it.[1] I was very honest, forthright and straight-forward with him. And it was at a time when, if he had said otherwise, I could have brought Mr. Kunze up here. I had a reservation on Delta—or on United Airlines.

But the problem is that he wouldn't have gotten here until 11:00. The earliest he could get here on a morning flight is 11:00 or even somewhere in that time, and then the last flight out is at 4:30. So that doesn't give him enough time to testify and be here in one day. So I thought this way [defense counsel] would have an opportunity to cross-examine him for as long as he wants.

And I talked to Mr. Kunze last week about whether or not he could come up here. Mr. Kunze was—he actually informed me that he was gone, he was out of town for a few days last week, and he was just getting back into town this Monday back in the office. So, yes, this was a matter of convenience and I made no representation to [defense counsel] that he was otherwise unavailable. I said it was inconvenient.

[Defense counsel]: You let me know when it's my turn, Your Honor.

[The court]: Are you done, [plaintiff counsel]?

[Plaintiff counsel]: Your Honor, I mean I did speak to [defense counsel] about this. And [defense counsel], you know, I did stipulate to allow him to read deposition testimony for a deposition that I wasn't even allowed to attend. I didn't even get a chance to cross-examine the witness. So, you know, I—

. . . .

And if you look at my letter where I confirmed that [defense counsel] had stipulated, he then sent me a fax back saying, yes, and you stipulated to that testimony by deposition. And, yes, I did.

And I do think that I could have objected to that testimony that was done well passed [sic] the discovery deadline two weeks ago.

. . . .

[Defense counsel]: [Plaintiff counsel] asked me if I would stipulate to Kunze's testimony by telephone. I said I'm not inclined to do that. Is he going to come to trial? The answer was: Yes, he's going to come but it's inconvenient for him.

He just answered the question, Your Honor: Did you tell him you would come? And the answer was no. And my stipulation to allow him to testify by telephone was based on that representation that he was going to be here.

And he just told you and the jury and that he was not coming.

[The court]: He said he was asked to come a couple [of] days ago.

[Plaintiff counsel]: Your Honor, he was out of town a couple of days ago so it was before that. I spoke to Mr. Kunze about it. Mr. Kunze, I think, was in New York for a few days, so I spoke to him last week about coming here. I had a reservation made for him and we had spoken about it months previously. And so it was—yes, I went [to defense counsel]. I said, hey, look. We've made these reservations, but I'm afraid that he's not going to be able to

1. The letter is not in the record on appeal.

get all his testimony in in one day in the time frame that he's allowed to travel here.

[The court]: Mr. Kunze, let me ask you something.

[Mr. Kunze]: Yes.

[The court]: You testified that you were asked to come to Wyoming once when [defense counsel] was in your office?

[Mr. Kunze]: Right.

[The court]: And that you were asked just a couple days ago to come; is that correct?

[Mr. Kunze]: It was probably Thursday or Friday because I was in New York when he called.

[The court]: Okay.

[Mr. Kunze]: And I didn't get back to my office until Tuesday.

[The court]: Yesterday?

[Mr. Kunze]: Yes.

[The court]: Okay.

[Mr. Kunze]: And there was no way I could come. I wouldn't have been able to come at all. I have seven kids and I can't take off whenever I feel like it. I have to have something known in advance to—

[The court]: Please stop.

[Defense counsel]: That's a misrepresentation, Your Honor. My stipulation was based on him coming to trial. And he just said again that he wasn't coming. I would have never stipulated to this had I known he wasn't coming. That was represented to me that—that was the meat of the representation, that was the meat of my agreement. He was coming if I said no.

[Plaintiff counsel]: Your Honor, I did not make that misrepresentation. I was very forthright with [defense counsel] from the outset. The situation where I traded off allowing testimony. If you'll look at the letters he sent back.

[The court]: I'm going to strike Mr. Kunze's testimony. We're going to be in recess for a few minutes. Thank you, Mr. Kunze.

. . . .

[The court]: You may be seated. Court is in session. [Plaintiff counsel] and [defense counsel] and the litigants are present, the jury is not present. I am going to call the jury back and I'm going to instruct them, counsel:

"Ladies and gentlemen: you are hereby instructed that you are to disregard the testimony of Lorenzo Kunze in its entirety."

[Plaintiff counsel]: Your Honor, may I address the Court on this matter, please?

[The court]: You can put it on the record, [plaintiff counsel], but I've made up my mind.

[Plaintiff counsel]: Well, may I say just one thing, please? Because it's a very serious thing when somebody thinks that I misrepresented something to the Court or to [defense counsel], and I think that if Mr. Kunze were given an opportunity to talk about our conversation that we had, it will mirror exactly what I said to [defense counsel].

And I think that—he was in the process of cross-examination. You've seen that he has difficulty knowing when to answer yes, when to explain, when to give an explanation. So I think if you give him an opportunity to ask him whether it's possible for him to be here today as opposed to, you know, and really give him a chance to describe that, he will say that, yes, it was possible if absolutely necessary, but it would have been extremely inconvenient. And those, I think, Your Honor, are the exact words that I told [defense counsel]. But I don't think that Mr. Kunze was given an opportunity to explain that.

[The court]: Boy, that's not what he said.

[Defense counsel]: Let me know when it's my turn, Your Honor.

[Plaintiff counsel]: Please give him an opportunity—

[The court]: Okay. Wait.

[Plaintiff counsel]: Can we have him call back?

[The court]: [Defense counsel]?

[Defense counsel]: Mr. Kunze said twice that he could not come. And this was important enough for me that I called Bret King and I asked him if he had talked with [plaintiff counsel] about the testimony of Kunze. And I said, "Bret, did [plaintiff counsel] tell you that Kunze was going to

come if I did not stipulate to this?" And Bret said to me, "[plaintiff counsel] told me that Kunze was definitely coming." And based upon that, I made my stipulation.

[Plaintiff counsel]: Your Honor—

[The court]: Okay. You can put something else on the record....[Plaintiff counsel], I'm going to instruct the ladies and gentlemen of the jury that they are to disregard the testimony of Lorenzo Kunze in its entirety.

[Plaintiff counsel]: Can't we get him on the phone for a few minutes and let [defense counsel] ask him those same questions with an opportunity to explain as opposed to—he was previously instructed to answer yes or no. I would think if he was given an opportunity to explain himself—I would like to present evidence regarding the reservation [that] was made. I had a confirmation number, I had a price, he was ready to go. And Mr. Kunze said that he could be here if absolutely necessary but it would be extremely inconvenient.

[The court]: That was not the testimony.

[Plaintiff counsel]: But—

[The court]: [Plaintiff's counsel], I've made my ruling.

. . . .

[Plaintiff counsel]: Your Honor, could I just make an offer of proof like in the morning with regards to this issue where we can have a conversation with Mr. Kunze, and I can show you the E-mail that I sent to Mr. Kunze and the confirmation regarding that?

[The court]: Would you get to your next witness on the telephone, please?

The court instructed the jury to disregard Kunze's testimony "in its entirety." The parties briefly revisited the issue at the end of the trial when the district court had determined to grant a defense motion for a judgment as a matter of law:

[Plaintiff counsel]: ... And maybe we could do that and also a motion on the striking of Mr. Kunze's testimony at the same time because, Your Honor, I can present Mr. Kunze's affidavit and testimony that will confirm that he had informed

me that he could be here if absolutely necessary.

So you're kind of cutting my legs off from under me without an opportunity for me to present the evidence the fact we had a reservation for Mr. Kunze. That we did have a conversation. I can provide an affidavit or we can get Mr. Kunze back on the phone that in fact he could have been here today if absolutely necessary, but it was extremely inconvenient. He did not have an opportunity to explain that....

[Defense counsel]: ... I asked Lorenzo Kunze if he could—if he was asked to come. His answer was yes. I asked him if he was going to come. His answer was no. Then after the argument and the blowup in court, for which I am very embarrassed, Your Honor, and I apologize, Lorenzo Kunze volunteered—and I don't know whether Mr. Jones was reporting it, I hope he was reporting it, but Mr. Kunze's volunteered statement was: I was in New York. I was coming home. There was no way I could come to Jackson. Now—

[The court]: Because I have seven children or something.

[Defense counsel]: Yes. Now, [plaintiff counsel] wants to have a chance to talk to him and get him back on the phone and get him to change that testimony....

[Plaintiff counsel]: Your Honor, I need to respond to that.

[The court]: [Plaintiff counsel], I'm not going to—you can put something on the record. I'm granting the judgment as a matter of law, and I'm going to get the jury in here and advise them.

I'm going to read them—it used to be a directed verdict and now it's a judgment as a matter of law, Rule 50(a)(1), and I'm going to grant it.

Would you have Deputy Harnish bring the jury in?

[Plaintiff's counsel]: Your Honor, I have been accused of fraud on the court and a number of, you know, making misrepresentations to the court. I don't think that we've been given an opportunity to clarify that and to characterize Mr. Kunze's state-

ment when he wasn't given an opportunity to explain himself. And I think if he were given an opportunity—

[The court]: [Plaintiff counsel], the Court very clearly heard the testimony of Mr. Kunze.

[Plaintiff's counsel]: Mr. Kunze didn't understand what he was being asked.

[The court]: [Plaintiff counsel], please don't argue with me. I've made my ruling and you've made your record.

[Plaintiff's counsel]: May I make an additional record with regard to—

[The court]: The jury's going to be coming in.

[Whereupon the jury entered the courtroom and the court granted the motion for judgment as a matter of law and dismissed the jury.]

[¶ 6] After Kunze's testimony was stricken, Witherspoon presented testimony from one additional witness before resting her case. The Defendants immediately moved for a judgment as a matter of law pursuant to W.R.C.P. 50(a)[2] arguing that there was no evidence or testimony from any witness that Dr. Lofaro breached any standard of care or that her treatment of Witherspoon was negligent in any way. The court granted the motion concluding that without the expert testimony from Kunze, Witherspoon failed to establish the standard of care or whether there had been a breach. Witherspoon appeals the striking of Kunze's testimony and the granting of the Defendants' Rule 50 motion.[3]

2. **Rule 50. Judgment as a matter of law in jury trials; alternative motion for new trial; conditional rulings.**

(a) *Judgment as a matter of law.*—

(1) If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue.

(2) Motions for judgment as a matter of law may be made at any time before submission of the case to the jury. Such a motion shall specify the judgment sought and the law and the facts on which the moving party is entitled to the judgment.

3. Since the events relating to the district court's approval of the parties' stipulation and Kunze's telephonic testimony were not reported, the Defendants submitted a Statement of Proceedings for Record pursuant to W.R.A.P. 3.03 stating the following:

1. The morning of the start of the trial prior to jury selection, an in-chambers conference with Court and counsel occurred, which was not reported or recorded.

2. During this conference, the Court inquired of counsel about why Appellant's expert witness, Lorenzo Kunze, would be testifying by telephone and was provided with the following information from counsel.

3. The Court was informed by both counsel that prior to the trial in the case Appellant's attorney contacted the attorney for the Appellee and asked if Appellant's expert witness, Lorenzo Kunze, could testify at trial, by telephone. Appellee's attorney asked if the expert witness would testify in person, if agreement for telephone testimony was not made and was advised by Appellant's attorney that the expert witness would appear in person for his testimony without this stipulation.

4. Appellee's attorney responded that he would stipulate to telephone trial testimony of the expert witness based upon this representation.

5. Appellant's attorney then sent to Appellee's attorney a confirmatory letter which stated that the parties agreed to allow Lorenzo Kunze to testify by telephone. Appellee's attorney added a statement to that letter referencing the deposition testimony of witness Jennifer Swett and returned it to Appellant's attorney.

6. The Court was informed that Appellee's attorney would never have stipulated to the telephone testimony of the expert witness Lorenzo Kunze without assurance from Appellant's attorney that Mr. Kunze would be appearing at trial without the stipulation.

7. During cross-examination of Lorenzo Kunze, the transcript then reflects the sequence of events regarding Mr. Kunze's intentions for appearing at trial and the basis for why his testimony was stricken.

W.R.A.P. 3.03 provides:

If no report of the evidence or proceedings at a hearing or trial was made, or if a transcript is unavailable, appellant may prepare a statement of the evidence or proceedings from the best available means including appellant's recollection. The statement shall be served on appellee, who may serve objections or propose amendments within 15 days after service. The statement and any objections or proposed amendments shall be submitted to the trial court for settlement and approval and as settled and approved shall be included by the clerk of the trial court in the record on appeal.

Witherspoon offered no objections to the Defendants' Statement of Proceedings for Record on

## STANDARD OF REVIEW

[¶ 7] As a general matter, questions regarding the evidentiary rulings of the trial court are reviewed on appeal for an abuse of discretion. *Kemper Architects, P.C. v. McFall, Konkel & Kimball Consulting Engineers, Inc.*, 843 P.2d 1178, 1187 (Wyo. 1992).

> Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means a sound judgment exercised with regard to what is right under the circumstances and without doing so arbitrarily or capriciously. (internal citations omitted).

*Fetzer v. J.D. Dayley & Sons, Inc.*, 2004 WY 64, ¶ 14, 91 P.3d 152, 158 (Wyo.2004) (quoting *Winterholler v. Zolessi*, 989 P.2d 621, 624–25 (Wyo.1999), and *Rogers v. State*, 971 P.2d 599, 601 (Wyo.1999)).

[¶ 8] A motion for judgment as a matter of law pursuant to W.R.C.P. 50 is reviewed *de novo:*

> "Despite the fact that judgment as a matter of law should be granted cautiously and sparingly, the district court has an obligation to direct entry of such a judgment where there is legally insufficient evidence to support a verdict on a particular issue." *Sayer v. Williams*, 962 P.2d 165, 167 (Wyo. 1998). We review the decision to grant or deny a motion for a judgment as a matter of law de novo. *Sundown, Inc.* [v. *Pearson Real Estate Co., Inc.*], 8 P.3d [324] at 330 [ (2000)]. Under our de novo standard, we undertake a full review of the record without giving deference to the trial court's views. *Wyoming Medical Center, Inc. v. Murray*, 2001 WY 63, ¶ 7, 27 P.3d 266, ¶ 7 (Wyo.2001). The test is whether the evidence is such that, without the witnesses' credibility being weighed or the weight of the evidence otherwise being considered, there can be but one conclusion as to the verdict that reasonable persons could have

reached. *Id.* We view the evidence in the light most favorable to the nonmoving party and give that party the benefit of all the reasonable inferences which may be drawn from the evidence. Id. When the facts presented permit the drawing of more than one inference, it is for the jury to choose which will be used. *Id.* "If the inferences favorable to the movant are subject to doubt, or if parallel inferences can be drawn, the motion appropriately is denied." *Id.*

*Worman v. Carver*, 2004 WY 38, ¶ 9, 87 P.3d 1246, 1249 (Wyo.2004) (quoting *Dewey v. Wentland*, 2002 WY 2, ¶ 28, 38 P.3d 402, 414 (Wyo.2002)).

## DISCUSSION

### Striking of Expert's Testimony

[¶ 9] Witherspoon argues that the district court abused its discretion when it struck the testimony of her expert witness and instructed the jury to disregard it. She complains that there was no articulated legal basis for the court's action. In particular, she insists that the court failed to fully ascertain the terms of the stipulation and its failure to allow her counsel's offer of proof was an arbitrary and capricious action. The Defendants counter that striking the witness's testimony was the proper remedy once it had been determined that Witherspoon's counsel[4] had misrepresented the basis upon which the stipulation was entered.

[¶ 10] Our review of the record convinces us that the district court abused its discretion when it struck the testimony of Witherspoon's expert witness. In response to allegations by the Defendants' counsel that he had misrepresented the basis on which the parties had entered into the stipulation, trial counsel for Witherspoon flatly denied that he had made any such misrepresentation, and multiple times during the colloquy excerpted above asked the district court to be allowed

Appeal, and the district court approved it as submitted. The rule states that the "appellant" may prepare a statement which must be served on the "appellee" who may offer objections. We note that the rule does not state that the "appellee" may prepare a statement under the rule. Since there is no objection to the statement, we need not determine the scope of the rule today. Furthermore, our ruling is not affected by acceptance of the statement as a valid representation of the proceedings before the trial court.

4. Witherspoon is represented by different counsel on appeal.

to question the expert witness to clarify the matter. He also asked the court to consider emails between himself and the witness, letters relating to the stipulation between himself and Defendants' counsel, and offered to produce proof that airline reservations had been obtained for the witness. Witherspoon's counsel's entreaties were to no avail. The district court refused to allow him to ask the witness clarifying questions and ignored his offers of proof.

[¶ 11] An allegation that a lawyer has made misrepresentations—had lied—to opposing counsel and the court is a very serious allegation. See Wyoming Rules of Professional Conduct 3.3, 3.4, 8.1, and 8.4 (LexisNexis 2006 Supp.). We have held that the manner in which the examination of a witness is conducted is largely within the discretion of the trial court, and that an abuse of that discretion will not be found as long as the decision concerning the manner of witness examination is reasonable. *Seaton v. State of Wyoming Highway Commission, District No. 1*, 784 P.2d 197, 202 (Wyo.1989); see also *Grabill v. State*, 621 P.2d 802, 814 (Wyo.1980). Here, Defendants' counsel elicited the critical testimony from the witness during cross-examination. In the usual course of trial, the opposing party would have been afforded an opportunity for redirect examination of the witness. *Seaton*, at *id.* ("The usual function of redirect examination is to allow a party to explain testimony elicited by an adversary's cross-examination of a witness."); see also *Sanville v. State*, 593 P.2d 1340, 1344 (Wyo.1979). The district court offered no reason for its refusal to allow Witherspoon's counsel to ask clarifying questions of the witness regarding the testimony elicited by defense during cross-examination. Given the gravity of the claim advanced by Defendants' counsel on the basis of the testimony he elicited from the witness, we have a difficult time judging the refusal to allow clarification through redirect as reasonable.

[¶ 12] Equally troubling was the court's refusal to even acknowledge counsel's requests to make an offer of proof. In *Jones v. Clark*, 418 P.2d 792 (Wyo.1966), we discussed the nature of an offer of proof. There, the

widow of a deceased vendor of real estate sued the purchasers for default on installment payments under a purchase agreement. The purchasers sought to question several witnesses about conversations they had had with the deceased vendor to establish that the requirement for prompt payment had been waived. The trial court sustained objections to the line of questioning and refused to allow the purchasers to make an offer of proof regarding the evidence. We made the following observations regarding offers of proof:

The manner in which the proprieties and rights of parties to make legitimate offers of proof when objections are sustained to counsel's interrogations were dealt with was unfortunate as it raises some doubt if there was a clear understanding between court and counsel as to the right of litigants to make offers of proof. There is at least a twofold purpose in according to litigants the right to make *offers* of proof. It must be borne in mind that the right is merely to *offer* the proof-not the right to *introduce* it. The right to offer is therefore almost absolute which is subject only to the court's discretion to *reasonably* restrict repetitious effort to offer the same or substantially the same type of proof which has been previously offered and its reception denied. The first purpose of such offers is to specifically advise the trial court of the nature of the testimony or evidence expected to be elicited by the interrogation. This is to sufficiently advise the court of the nature and character of the offered evidence and thereby enable the court to be in a better position to correctly rule upon its admissibility. The second purpose is to ensure that the whole matter will be exhibited in the record in order that an appellate or reviewing court may be sufficiently advised and enabled to fairly pass upon the correctness of the trial court's rulings.

The court's admonitions, although somewhat harshly given, might reasonably be interpreted as requiring counsel only to point out the relevancy, materiality, and competency of the offered evidence. This, of itself, was not improper. In 53 Am.Jur., *Trial*, § 99, p. 88, it is pointed out that:

'... As a general rule, a party offering evidence must show its relevancy, materiality, and competency, and when he seeks to introduce evidence which does not appear to be relevant or competent, or propounds to his witness an interrogatory which appears to call for an irrelevant or incompetent answer, he should make a formal offer of proof showing what testimony he proposes to adduce, and, when necessary, his intention to prove other facts which will render the evidence relevant or competent; the purpose for which apparently irrelevant or incompetent evidence is offered should be disclosed....'

However, the court's remarks could as reasonably be taken to deny counsel the right to advise the court of the nature and character of the evidence offered. This would be improper as the litigants were not only entitled but were required to bring to the court's attention of what the offered proof would consist.

As to the need to ask for and receive the court's permission to make an offer of proof, the following is found in the same section of Am.Jur., p. 89, as that referred to above:

'Apparently, there is and could be no rule requiring a party first to obtain the court's permission to make an offer of proof. The situation of a litigant invites evidence to sustain his position. Neither the court nor opposing counsel can know whether evidence which a party desires to present is competent or material until it is proffered. When an offer of proof is made, the court should assume that the facts stated can be proved by competent evidence, and rule on the offer, leaving objections to the manner of proof to be decided later. The materiality and relevancy of an offer of evidence must be apparent when the offer is made, to put the court in error in excluding it....'

This is actually for the purpose of informing the court so that it may rule intelligently on objections made or to be made to its admissibility as well as to preserve such ruling should it become proper to review the same. Subject to the right of the court to refuse undue repetition, the right of a litigant to offer proof is absolute, although it is the court's equal prerogative to rule the evidence inadmissible.

*Jones,* 418 P.2d at 798–99. See also *Hepp v. Hepp,* 420 P.2d 118, 118 (Wyo.1966) (improper for court to admonish attorney that "if there was one more attempt to make such offer" of proof, drastic action would be taken); *Vanover v. Vanover,* 77 Wyo. 55, 307 P.2d 117, 122 (1957) ("It is not only the absolute right and privilege of a party to make an offer of proof when an objection to his interrogation of a witness is sustained, but it is also the right of this court to have the record set forth the statement of what the offered proof will consist and which the party is contending should properly be received."); *People v. Camel,* 10 Ill.App.3d 1022, 295 N.E.2d 270, 275 (1973) (citing *Jones* as support for the proposition that "The right to offer proof is almost absolute, subject only to the court's discretion to reasonably restrict repetitious effort to offer the same or substantially the same type of proof which has been previously offered and its reception denied."); *State v. Francis D.,* 75 Conn.App. 1, 815 A.2d 191 (2003); and *Hill v. State,* 699 So.2d 974 (Ala.Crim.App.1997); 89 A.L.R.2d 279 *Ruling on Offer of Proof as Error,* § 5 (Cum.supp.) (collecting cases). Witherspoon's counsel made an offer of proof to refute the allegation that he had made misrepresentations to opposing counsel and the court. The offer cited specific evidence—emails, letters, and airline reservations—that was not, on its face, repetitious in nature. Without explanation, the district court ignored all of counsel's offers.

[¶ 13] On the basis of testimony he had elicited during cross-examination of a plaintiff's witness, counsel for the Defendants leveled allegations that carried serious legal and ethical ramifications for Witherspoon's counsel and his client. Nevertheless, without any explanation on the record, the district court refused to allow redirect of the witness and ignored all offers of proof. While we have always accorded considerable latitude to a district court when an action rests within its discretion, we have stressed that this does not "mean that the court has unrestrained power to act in an arbitrary manner." *Win-*

*terholler v. Zolessi*, 989 P.2d 621, 627–28 (Wyo.1999) (quoting *Waldrop v. Weaver*, 702 P.2d 1291, 1294 (Wyo.1985)).

> Fundamental to the concept of the rule of law is the principle that reason and justice shall prevail over the arbitrary and uncontrolled will of any one person; and that this applies to all men in every status: to courts and judges, as well as to autocrats or bureaucrats. The meaning of the term 'discretion' itself imports that the action should be taken within reason and good conscience in the interest of protecting the rights of both parties and serving the ends of justice. *It has always been the policy of our law to resolve doubts in favor of permitting parties to have their day in court on the merits of a controversy.*

*Id.* (emphasis in *Winterholler*). While hesitant to interject ourselves into the management of a trial, we must do so here. Witherspoon's counsel was not allowed to present an effective response to the allegations leveled by Defendants' counsel with the consequence that his client was denied the opportunity to have her claim judged on its merits. We can only characterize the district court's actions in refusing to allow redirect or to permit the proffered offer of proof as arbitrary. Under the circumstances, that was an abuse of discretion.

### Judgment as a Matter of Law

[¶ 14] The question that remains is whether the striking of the expert witness's testimony was harmless error. An error requires reversal of the lower court judgment only if it is prejudicial to a substantial right. "[F]or an error to be harmful, there must be a reasonable probability that in the absence of error the verdict might have been more favorable [to the losing party]." *Rivermeadows, Inc. v. Zwaanshoek Holding and Financiering, B.V.*, 761 P.2d 662, 671 (Wyo.1988) (quoting *Herman v. Speed King Manufacturing Company*, 675 P.2d 1271, 1278 (Wyo.1984) (rejection of ex-

pert's testimony even if erroneous was harmless); and *ABC Builders, Inc. v. Phillips*, 632 P.2d 925, 935 (Wyo.1981)).

[¶ 15] After Witherspoon finished her case, the Defendants moved for judgment as a matter of law pursuant to W.R.C.P. 50(a). In granting the motion, the district court found that without the testimony of her expert witness, Witherspoon could not establish the requisite standard of care:

> [A]s far as the Court's concerned, [Witherspoon needed] to get passed [sic] this motion, [she] needed to have the testimony of expert Mr. Lorenzo Kunze. The Court, for good cause, struck the testimony of Mr. Lorenzo Kunze and, therefore, the Court does agree with the defendant saying that there was a failure to show a duty, number one, and a breach of that duty through the testimony of—as I said, I think it was necessary that Mr. Kunze's testimony be—
> ... I am granting the defendant's motion. It used to be called a directed verdict. Motion to dismiss. But I'm going to grant it.

Since the absence of Kunze's testimony was the district court's cited basis for granting the motion, Witherspoon, of course, contends that striking that testimony was not harmless error.[5] The Defendants counter that even if Kunze's testimony was considered, it was not sufficient to establish a standard of care or any breach thereof by Dr. Lofaro. The Defendants contend that this case involved complicated issues of medical causation that are beyond the ken of lay persons, and since Kunze was not a medical doctor and did not offer any opinion as to whether Dr. Lofaro was negligent or breached the relevant standard of care, any error in striking his testimony was harmless.

[¶ 16] We have held in medical malpractice actions that the plaintiff must establish through expert testimony: (1) the accepted standard of medical care or practice; (2) that the defendant's conduct deviated from that standard; and (3) that deviation was the

---

5. Witherspoon notes the district court ruled that this was not a medical malpractice case because a medical license is not required to perform laser hair removal treatments. She argues that, therefore, expert testimony was not necessary and that there was sufficient evidence in the form of testi-

mony from lay witnesses, including Witherspoon herself, to establish a standard of care and breach thereof by Dr. Lofaro. In light of our decision regarding the exclusion of the expert testimony, it is not necessary for us to address this argument.

legal cause of the plaintiff's injuries. *Oakden v. Roland*, 988 P.2d 1057, 1059 (Wyo.1999) (quoting *Harris v. Grizzle*, 625 P.2d 747, 751 (Wyo.1981)); see also *Armstrong v. Hrabal*, 2004 WY 39, ¶ 12, 87 P.3d 1226, 1231 (Wyo. 2004); and *Mize v. North Big Horn Hospital District*, 931 P.2d 229, 233, 234 (Wyo.1997).

[¶ 17] This, however, is not a medical malpractice action. In a pre-trial order denying a motion by the Defendants to strike the testimony of Kunze and for summary judgment, the district court ruled:

1. The question of whether hair removal is the practice of medicine is an issue of law to be decided by the Court.

2. Any person conducting the IPL hair removal procedure is not practicing medicine according to the definition of "Practicing Medicine", in W.S. § 33–26–102(a)(xi). The Wyoming State Board of Medicine determines what constitutes the practice of medicine. The Board has the duty to pass upon the qualifications and determine the fitness of all persons desiring to practice medicine in this state. W.S. § 33–26–202(a). The Board does not allow a person to practice medicine in this state without a license granted by the Board. W.S. § 33–26–301(a). Since a person may perform IPL hair removal without a license, it is clearly not the practice of medicine as the above statute would be violated. In addition, Defendants have provided no evidence that the Board has elected to treat IPL or Laser hair removal as the practice of medicine. It is noted that physician supervision is required by the manufacturers of hair removal equipment. However, the process of hair removal, in itself, does not require a medical degree, license or certification and cannot be considered the practice of medicine.

3. This is not a medical malpractice case. Lorenzo Kunze, as an IPL hair removal specialist, is qualified to testify as an expert witness and his opinions may be of aid to a trier of fact. As such, he shall not be stricken as an expert. The Court has reviewed Mr. Kunze's educational background and work experience and determines he is competent to testify.

4. There is a genuine issue of material fact. The deposition of Lorenzo Kunze contains evidence of possible substandard care by Dr. Lofaro. The weight of such evidence is for a trier of fact to determine.

[¶ 18] In her testimony prior to Kunze taking the stand, Witherspoon described the procedures utilized by Dr. Lofaro in her case, how they differed from prior treatments she had received, and the injuries she sustained after the treatment at issue. In his testimony, Kunze described his qualifications related to IPL hair removal treatment, reviewed the proper protocol that should be followed when applying the treatment, and described the potential injuries a patient could suffer if the protocols were not followed. Contrary to the Defendants' representation, Kunze did indeed opine that if Witherspoon's depiction of her treatment was accurate, then Dr. Lofaro's care fell below the standard of care applicable to IPL hair removal treatment. If the district court had not erroneously struck the testimony of Kunze, that evidence was sufficient for the question of whether or not the Defendants' breached the duty of care owed to Witherspoon to be submitted for determination by the jury. Therefore, the error was not harmless.

[¶ 19] We reverse the district court's judgment and remand for a new trial.